C. H. LANGDEAU, RECEIVER FOR I. C. T. INS. CO. v.
REPUBLIC NATIONAL BANK OF DALLAS.

C. H. LANDEAU, RECEIVER FOR I. C. T. INS. CO. v.
MERCANTILE NATIONAL BANK AT DALLAS.

Nos. A-7728 and A-7729. Decided November 23, 1960.
Rehearings Overruled December 21, 1960.
(341 S.W. 2d Series 161)

*Keith, Mehaffy, McNicholas & Weber* and *Quentin Keith,* of Beaumon, *Cureton & Lanham* and *W. E. Cureton,* of Waco, and *Cecil C. Rotsch,* of Austin, for petitioner C. H. Langdeau, Receiver.

*Leachman, Gardere, Akin & Porter* and *Neth L. Leachman,* of Dallas, and *Dan Moody,* of Austin, for Republic National Bank of Dallas, *Carrington, Johnson & Stephens* and *Hubert D. Johnson,* of Dallas for Mercantile National Bank at Dallas, Re-Respondents.

MR. JUSTICE SMITH delivered the opinion of the Court.

These venue cases present but a single question of law which may be disposed of in one opinion.

■ The question presented is: Does Title 12 U.S.C.A., Sec. 94[1], give a national bank, regardless of the provision of the Texas Venue Statutes, especially the provisions of Article 21.28, Sec. 4(f)[2] of the Insurance Code, the right to have an action against it tried in the county of its domicile?

The Court of Civil Appeals in its opinion reported in Vol. 331 S.W. 2d 349, answered the question in the affirmative. The opinion, in effect, sustained the bank's position: (1) that federal statutes are paramount on matters affecting such federal instrumentalities as national banks, and that state statutes in conflict therewith must yield to the federal statutes, and (2)

---

1.—"Actions and proceedings against any association under this chapter may be had in any district or territorial court of the United States held within the district in which such association may be established, or in any state, county or muncipal court in the county or city in which said association is located havng jurisdiction in similar cases. Sec. 94, Title 12, U. S. Code, Annotated.

"The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under Chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

"All national banking associations shall, for the purpose of all other actions by or against them, be deemed citizens of the States in which they are respectively located. 28 United States Code, Annotated, Section 1348."

2.—"New Lawsuits. The court of competent jurisdiction of the county in which the delinquency proceedings are pending under this Article shall have venue to hear and determine all actions or proceedings instituted after the commencement of delinquency proceedings by or against the insurer or receiver."

that the decisions of United States courts involving the construction of federal statutes relating to national banks are binding on state courts and that the state venue statutes are not applicable.

The record reveals that delinquency proceedings were filed in the 98th District Court against I.C.T. Insurance Company and petitioner, C. H. Langdeau, was appointed receiver under the provisions of Section 2(a) of Article 21.28, supra, of the Insurance Code.

Thereafter, petitioner instituted this suit against a number of defendants, including the two respondent national banks, charging a conspiracy to defraud the insurance company, its policyholders, stockholders, and creditors, and sought a judgment against all defendants, jointly and severally. In effect, it is a suit for the recovery of assets of the delinquent insurance company. In this connection, in determining the venue question here involved, we are not passing upon the merits, and nothing said herein shall be so construed.

■ The respondents' pleas of privilege to be sued in Dallas County, Texas, the county of the residence and location of each bank, were overruled by the trial court, but sustained by the Court of Civil Appeals as already stated. We deem it necessary to take note of the respondents' challenge to the jurisdiction of this court, which is to the effect that when, as here, a conflict of decisions is made the basis of Supreme Court jurisdiction, it is essential that such conflict appear on the face of the opinions themselves, and that petitioner has failed to meet such test. This test is laid down in the case of State v. Wynn, 157 Texas 200, 301 S.W. 2d 76. We believe that the decision in the present case is sufficiently in conflict with the decision in the case of Guerra v. Lemburg, 22 S.W. 2d 336, er. dis. to give this court jurisdiction.

In the case of Guerra v. Lemburg, supra, the Commercial State Bank of Sinton, San Patricio County, Texas, and the City National Bank of Corpus Christi, Nueces County, Texas, were sued in Hidalgo County, the residence of a co-defendant. The National Bank of Corpus Christi filed a plea of privilege to be sued in its home county claiming, as the respondents claim in the present case, that under the provisions of 12 U.S.C.A. Sec. 94, a national bank can only be sued in a state court in the county of its domicile, regardless of the fact that under the provisions of the Texas venue statutes, the suit could have been

brought in Hidalgo County where alleged fraudulent representations were made. The trial court sustained the plea of privilege. The Court of Civil Appeals reversed, holding that the bank was not entitled to a change of venue,[3] thereby holding directly opposite to the holding in the present case. The Court of Civil Appeals in the present case quotes at length from the case of Monarch Wine Company v. Butte, 1952, 113 Cal. App. 2d 883, 249 P. 2d 291. That case refers to the case of Guerra v. Lemberg, supra, and the case of Leonardi v. Chase National Bank of the City of New York, 2 Cir., 81 F. 2d 19. The Court of Civil Appeals cites this latter case in support of its holding that the federal statute controls. The Monarch Wine Company case, supra, held that the decision in the Guerra v. Lemburg case, supra, is contrary to the decision in Leonardi, supra, and the opinion of the Court of Civil Appeals in the present case hold that the Guerra case was erroneously decided, and that it agrees with the Leonardi case. We are convinced that the specific conflicting holdings in the two cases create a jurisdictional conflict. The holdings are so far upon the same state of facts that the decision of one of the cases is necessarily conclusive of the decision in the other. See Dockum v. Mercury Ins. Co., 134 Texas 437, 135 S.W. 2d 700. Accordingly, the application for writ of error presents a case within the jurisdiction of this court.

We now proceed to a decision of the principal question. We have concluded to reverse the judgment of the Court of Civil Appeals and affirm that of the trial court for the reasons now to be stated.

**3** If, under federal decisions, United States Revised Statute No. 5198, 12 U.S.C.A., Sec. 94, is applicable here, then all state

---

3.—Quote from Guerra v. Lemburg, supra:

"In * * * (28 U.S.C.A., section 41(16), national banks are declared to be, for the purposes of all other actions except those enumerated, against or by them, for property, * * * , and suits in equity, citizens of the states in which they are respectively located. Being citizens of a state carries with such citizenship the burdens, as well as the privileges, pertaining to it. This is provided in * * * (12 U.S.C.A., section 24(4), as to national banks, where they are given the power 'to sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons.'

"In conferring jurisdiction generally upon state courts in regard to suits against national banks, * * * the provision in question is embodied * * * under the head 'Usurious Interest' (12 U.S.C.A., sections 86, 94), showing conclusively that no provision preventing national banks from being sued in state courts, under any and all other circumstances, in any other than the county of the domicile is in existence. The provision has reference alone to actions for penalties arising from usury, which is legislated against in the paragraph cited. The law does not apply to any other class of actions, and in all other suits national banks are citizens of the state in which they are located, clothed with the privileges of citizenship, and subject to any burdens and liabilities attached thereto."

statutes in conflict therewith must yield. See Van Reed v. Peoples National Bank, 198 U.S. 554, 25 S. Ct. 775; Citizens National Bank of Stamford v. Stevenson, 231 S.W. 364, Texas Comm. App. We agree that the issue here also is not one of jurisdiction, but is one as to the proper venue, or proper locality where a state statute has fixed venue. However, we do not agree with respondents' contention that the proper venue of this action is determined by Section 94 of 12 U.S.C.A., supra. See Casey v. Adams, 102 U.S. 66, 68, 26 L. Ed. 52 (1880). The proper venue of this case is determined by Article 21.28 Sec. 4(f), supra, which provides, in effect, that the court of competent jurisdiction of the county in which the delinquency proceedings are pending shall have venue to hear and determine all actions or proceedings instituted after the commencement of the delinquncy proceedings.

It was not the intention of the Congress in adopting 12 U.S.C.A., Section 94, supra, that it was to control with respect to an action against a national bank commenced in a state court, especially where such action was commenced in a district court located in the county designated by state statute to have venue. This is a matter where the state is exercising powers wholly within the domain of state interest, and is, therefore, insulated from federal judicial review as well as the application of federal venue statutes. It is unnecessary to our decision to determine whether this particular action is local or transistory in nature. Texas has adopted Article 21.28, supra. This is the statute which is applicable to the action here involved. In 92 C.J.S.A., section 7, p. 678, it is said: "In many jurisdictions statutory enactments applicable to actions, whether transitory or local, have rendered the distinction between these classes of actions of minor importance, or have done away with it entirely." Therefore, whether our action properly belongs to one class or the other, it, nevertheless, must be instituted under the conditions prescribed in the state statute. See State ex rel. Gardner v. Hall, 282 Mo. 425, 221 S.W. 708.

However, the courts are in conflict on the question as to whether an action can be brought against a national bank in a state court outside of the county in which the bank is located. U.S. Revised Statute No. 5198, 12 U.S.C.A., section 94, supra, has been differently construed by state courts. A majority of the state courts have held that the provisions of 12 U.S.C.A., section 94, quoted above, do not deprive the state courts of jurisdiction of an action against a national bank located and doing business in another state, or in a county or city other than that

in which the action is brought. See the annotation "National Bank as subject to suit outside county of its residence," 86 A.L.R. 47. The courts so holding apparently proceeded on the theory that the use of the word "may" in the statute renders it permissive and not mandatory, and, hence, national banks may be sued in any state court of competent jurisdiction, even though the court is outside of the county in which the bank is located. *Paton's Digest of Legal Opinions*, edited and compiled by the American Bankers Association, under the supervision and direction of Thomas B. Paton, Assistant General Counsel of the Association, Vol. II, p. 2407, et seq. recognizes the rule announced in the case of Curlee v. National Bank of Fayetteville (1924), 187 N.C. 119, 121 S.E. 194, 195, to be against the contention of the banks in the present case. Paton correctly analyzes the Curlee case:

"In that case it appears that the plaintiffs, residents of Mecklenburg County, North Carolina, sued the defendant, a national bank located in Cumberland County, North Carolina, for alleged damages to the plaintiffs; financial and social standing arising from a wrongful attachment of the plaintiffs' property in Cumberland County. The action was brought in the superior court of Mecklenburg County. The bank thereupon entered a special appearance, asking for a removal of the case to the superior court of Cumberland County, on the principal ground that, under the federal statute, quoted above, a national bank without its consent is not suable in any state court other than a state court located in the county in which it has its place of business. The court, pointing out that the authorities are conflicting, ruled that the defendant bank's contentions was not sustainable.

"The following cases hold that such provisions are permissive, not mandatory, and do not deprive the state courts of jurisdiction of an action by or against a national bank, located or doing business in another state, or in a district or county together than that in which the action is brought: Fresno Nat. Bank v. Superior Ct., 83 Cal. 491, 24 Pac. 157; Continental Nat. Bank v. Folsom, 78 Ga. 449, 3 S.E. 269; Cooke v. State Nat. Bank, 50 Barb. (N.Y.) 339, affirmed in 52 N.Y. 96, 11 Am. Rep. 667; Robinson v. Nat. Bank, 81 N.Y. 385, 37 Am. Rep. 508; Talmage v. Third Nat. Bank, 91 N.Y. 531; Lee v. Citizens' Bank, 5 Ohio Dec. (Reprint) 21; Holmes v. National Bank, 18 S.C. 31, 44 Am. Rep. 558; Montpelier First Natl. Bank v. Hubbard, 49 Vt. 1, 24 Am. Rep. 97, See also, Levitan v. Houghton Natl. Bank, 174 Mich. 566, 140 N.W. 1019; Cassatt v. First National Bank of West New York, (1931) 9 N.J. Misc. 222, 153 Atl. 377."

The rule, as expressed in the above decisions, is sound and is hereby approved and followed. Assuming, as we must in this venue case, that both banks are necessary parties, that would be the result if the two banks (or ten banks) had been domiciled in different counties, and each bank, whether two or ten, had filed a plea of privilege under the federal statute? To invoke the rule insisted upon by the respondents would, in effect, deny the petitioner the right to maintain the suit alleged in his petition. See County of Okeechobee v. Florida National Bank, 112 Fla. 309, 150 So. 124.

Among the cases relied upon by respondents is that of First National Bank of Charlotte v. Morgan (1889) 132 U.S. 141, 10 S. Ct. 37, 33 L. Ed. 282. In this case the court definitely stated that the federal venue statute, in force at that time, section 57 of the National Bank Act, which was practically the same as 12 U.S.C.A., section 94, quoted above, was mandatory rather than permissive. However, the statement was dicta, and is, therefore, not binding on this court.

One of the principal cases relied upon by the respondents and cited by the Court of Civil Appeals, is that of Leonardi v. Chase National Bank, 81 F. 2d 19, 2nd Cir., certiorari denied 298 U.S. 667, 56 Sup. Ct. 941, 80 L. Ed. 1398. The national bank involved had its principal and central office in the Southern District of New York, and with a branch bank office in Brooklyn in the Eastern District of New York. The court held that the bank's principal place of business was established in the Southern District, and not in the Eastern District, the location of its branch bank; that, therefore, the court in the Eastern District was without jurisdiction. The court in so holding said: "* * * To agree with the interpretation of Sections 51 and 52 of the Judicial Code, as amended (28 U.S.C.A. Nos. 112, 113), in Galveston, H. & S. A. R. Co. v. Gonzales * * * the district in which the national bank has its principal place of business and which contains the place recited in its charter * * * should be taken as the proper district for suits against a national bank." The case of Galveston, Harrisburg & San Antonio Railway Company v. Gonzales, 151 U.S. 496, 14 S. Ct. 401, 38 L. Ed. 248, cited in the Leonardi case, supra, as the basis for its holding, was a suit against a railway corporation. There the contention was made that a railway corporation should be considered an inhabitant of the place in which its public office is located, and that the public office of a railroad corporation shall be considered the domicile of such corporation, citing Article 4120, 2 Sayles Texas Civil Statutes. On the other hand, the contention was made that suits

against a railway corporation may be brought in any county through or into which the railway of such corporation extends or is operated. The court in holding that the venue of the suit was in the county of its domicile said: "* * * *but it is manifest that, so far as the federal courts are concerned,* this provision (Article 1195, Texas statute) is subordinate to the first section of the Act of 1888, requiring civil suits to be brought within the district of which the defendant is an inhabitant." (Emphasis added.) Clearly, the court in both the Leonardi and the railway corporation cases, was limiting the scope of its holding to transistory actions commenced against national banks and railway corporations in a federal court.

■ These cases are not decisive of the paramount question confronting us here. Of course, a state by legislative enactment cannot deprive a federal instrumentality of one of its constitutional or statutory rights, nor can a federal right be defeated under the name of state practice. The respondent banks have been deprived of no constitutional or statutory rights by the bringing of this action in Travis County.

That the Congress has never intended to exempt national banks from suits in state courts, established elsewhere than in the county or city in which such banks were domiciled, and that the paramount purpose was to limit the effect of the Act to action against national banks commenced in a federal court is demonstrated by its action in amending the Judiciary Act. See Title 28, Judiciary and Judicial Procedure, 80th Cong. 2d Sess., Vol. 62, part 1, p. 869, Public Laws. When the Act was adopted, it purportedly repealed Sec. 4, Chapter 290,[4] which had been a part of the statute since July 12, 1882. A comparison of the provisions of Section 1348, supra, with the provisions of Section 4, Chapter 290, indicates that the former did not actually repeal the latter, but instead reinacted the statute, but in different language. The enactment of Section 4, Chapter 290, in 1882, and the rewriting of the Judiciary Act in 1948, did not mean the repeal of the section of the Banking Act, now designated as Section 94, supra, but indicated the intention of the Congress to limit the Act so as to apply only to actions against a national bank commenced in a federal court.

---

4.—"The jurisdiction for suits hereafter brought by or against any association established under any law providing for national banking associations, except suits between them and the United States, or its officers and agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national banking associations may be doing business when such suits may be begun; and all laws or parts of laws of the United States inconsistent with this proviso be, and the same are hereby, repealed."

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Associate Justice Calvert concurs in the result.

Opinion delivered November 23, 1960.

Rehearing overruled December 21, 1960.