The COASTAL CORPORATION, Coastal Holding Corporation, CIC Industries, Inc., Coastal States Crude Gathering Co., Coastal Refining & Marketing, Inc., Javelina Company, and American Chrome & Chemicals, Inc., Petitioners,

v.

Jorge GARZA, et al., Respondents.

No. 96–1208.

Supreme Court of Texas.

Argued Feb. 3, 1998.

Decided July 14, 1998.

Rehearing Overruled Sept. 24, 1998.

Tom Hermansen, Carlos Villarreal, Corpus Christi, William Powers, Jr., Austin, S. Shawn Stephens, Michael M. Gibson, Houston, R. Scott Hogarty, The Woodlands, Jeffrey K. Sherwood, Washington, DC, Kevin F. Risley, N. Terry Adams, Jr., Houston, Joseph A. Cohn, Corpus Christi, Carla J. Bishop, Mark J. Tempest, Lynne Liberato, Houston, Samuel Issacharoff, Austin, for Petitioners.

Stuart Jonathan Dow, Dennis C. Reich, J. Hoke Peacock, III, Richard B. Drubel, Houston, Robert C. Hilliard, Corpus Christi, H. Lee Godfrey, Houston, Jeanette Cantu-Bazar, Corpus Christi, James H. Miller, Houston, Steve T. Hastings, Corpus Christi, Robert J. Binstock, Shari A. Wright, Houston, Alverto R. Huerta, Corpus Christi, for Respondents.

ENOCH, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, SPECTOR, BAKER and ABBOTT, Justices, join.

This is an interlocutory appeal from a class-certification order. Residential property owners in Corpus Christi sued several chemical manufacturers and commercial facility owners for property damage from alleged long-term emissions of contaminants. The trial court certified two main classes, each with several subclasses. The court of

appeals affirmed. Several named defendants filed applications for writ of error, asserting that this Court has jurisdiction to consider the interlocutory appeal because the court of appeals' opinion conflicts with *RSR Corp. v. Hayes*, 673 S.W.2d 928 (Tex.App.–Dallas 1984).[1] We disagree. Consequently, we dismiss this appeal for want of jurisdiction.

## I. BACKGROUND

Jorge Garza and others (the "Property Owners") filed six separate suits against The Coastal Corporation and others (collectively, "Coastal") asserting that Coastal's facilities' alleged emissions of benzene and hexavalent chromium diminished their property value. Some Property Owners also complained that their property was contaminated with groundwater hydrocarbon emissions, further devaluing their property.

The Property Owners moved to certify a class including the owners of about 2,500 nearby parcels of residential real property. The trial court certified two different classes. The "I–37 North" class consisted of all persons owning single-family residential real property on June 1, 1991, within a certain geographical boundary. The trial court divided this class into five subclasses based on the date on which the class member acquired the property, and an additional subclass of property owners whose property overlies the alleged surface groundwater hydrocarbon contamination.

Each member of the second class, the "I–37 South" class, belonged to one of two geographical subclasses: (1) the Leopard Street Location subclass; and (2) the Agnes Street Location subclass. The trial court also divided the "I–37 South" class into five subclasses according to property acquisition date.

Coastal appealed the class-certification order. Such an interlocutory order is appealable to the court of appeals under section 51.014 of the Texas Civil Practice and Remedies Code.[2] The court of appeals affirmed the class-certification order.

## II. STANDARDS FOR CONFLICT JURISDICTION

Section 22.225(b)(3) of the Texas Government Code makes jurisdiction over interlocutory appeals generally final in the courts of appeals.[3] However, section 22.225(c) vests jurisdiction in this Court over, among other matters, interlocutory appeals "in which one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court...." [4] Section 22.225(c) expressly incorporates the standards for conflict jurisdiction in section 22.001(a)(2) of the Government Code. That section grants this Court jurisdiction over "case[s] in which one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court on a question of law material to a decision of the case." [5] Coastal asks us to exercise jurisdiction over the class-certification order pursuant to these provisions.

Noting that it is "difficult ... to establish conflicts jurisdiction," [6] we stated in *Gonzalez v. Avalos* that "[f]or this Court to have jurisdiction on the ground of conflict it must appear that the rulings in the two cases are 'so far upon the same state of facts that the decision of one case is necessarily conclusive of the decision in the other.'" [7] In *Christy*, we remarked that

> [f]or jurisdiction to attach on the basis of conflict[,] "[t]he conflict must be on the very question of law actually involved and determined, in respect of an issue in both cases, the test being whether one would

---

1. 673 S.W.2d 928 (Tex.App.—Dallas 1984, writ dism'd w.o.j.).

2. *See former* TEX. CIV. PRAC. & REM CODE § 51.014(3) (allowing interlocutory appeal from order that "certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure"). The section designation for this provision was changed in 1997. The current version, which is substantially identical, is now found at TEX. CIV. PRAC. & REM.CODE § 51.014(a)(3).

3. TEX. GOV'T CODE § 22.225(b)(3).

4. TEX. GOV'T CODE § 22.225(c).

5. TEX. GOV'T CODE § 22.001(a)(2).

6. *Gonzalez v. Avalos*, 907 S.W.2d 443, 444 (Tex. 1995).

7. *Id.*, quoting *Christy v. Williams*, 156 Tex. 555, 298 S.W.2d 565, 567 (1957).

operate to overrule the other in case they were both rendered by the same court."[8]

■ Though this standard is strict, it does not require factual identity for two cases to conflict. While occasionally this Court has suggested that cases cannot conflict without nearly identical facts,[9] more often we have emphasized that the decisions need only be *"so far upon* the same state of facts" that they would control one another.[10] In short, cases do not conflict if a material factual difference legitimately distinguishes their holdings. On the other hand, immaterial factual variations do not preclude a finding of jurisdictional conflict. A conflict could arise on very different underlying facts if those facts are not important to the legal principle being announced.

In applying the *Christy* standard, we have ignored factual differences not material to the holdings being compared.[11] For example, in *Newman v. Obersteller*[12] we had to decide whether section 101.106 of the Civil Practice and Remedies Code[13] is an "immunity" statute for purposes of triggering a right of interlocutory appeal under former section 51.014(5) of the Civil Practice and Remedies Code. The court of appeals in *Obersteller* held that section 101.106 was not an

immunity statute, while other courts in *City of Galveston v. Whitman*[14] and *Davis v. Mathis*[15] earlier had concluded to the contrary. Even though these three cases arose under very different facts—*Obersteller* involved a suit by a high school student against his coach for intentional infliction of emotional distress; *Whitman* involved a suit against emergency service dispatchers for alleged delay in responding to an emergency; and *Davis* involved a suit against a bus driver arising from a traffic accident—we held in *Obersteller* that the conflicting statutory interpretations vested this Court with jurisdiction over the interlocutory appeal.[16]

With this understanding of our conflict jurisdiction in mind, we turn to whether the court of appeals' opinion in this case conflicts with *RSR Corp. v. Hayes*,[17] as Coastal asserts.

### III. ANALYSIS

■ In *RSR*, the Dallas Court of Appeals overturned a class-certification order.[18] Residential property owners had sued the owner of a lead smelter, claiming that airborne lead emissions had caused them personal injury

8. *Christy*, 298 S.W.2d at 568–69, *quoting West Disinfecting Co. v. Trustees of Crosby Indep. Sch. Dist.*, 135 Tex. 492, 143 S.W.2d 749, 750 (Tex. Com.App.1940).

9. *See Gonzalez*, 907 S.W.2d at 444; *Christy*, 298 S.W.2d at 567.

10. *Friday v. Grant Plaza Huntsville Assocs.*, 610 S.W.2d 747, 750 (Tex.1980) (emphasis added); *accord Dixon v. Southwestern Bell Tel. Co.*, 607 S.W.2d 240, 241 (Tex.1980); *Rogers v. Rogers*, 561 S.W.2d 172, 172–73 (Tex.1978); *Hopkins v. First Nat'l Bank*, 551 S.W.2d 343, 345 (Tex. 1977); *John Farrell Lumber Co. v. Wood*, 400 S.W.2d 307, 308–09 (Tex.1966); *Langdeau v. Republic Nat'l Bank*, 161 Tex. 349, 341 S.W.2d 161, 163 (1960); *International Harvester Co. v. Stedman*, 159 Tex. 593, 324 S.W.2d 543, 546 (1959); *State v. Wynn*, 157 Tex. 200, 301 S.W.2d 76, 79 (1957).

11. *See, e.g., Newman v. Obersteller*, 960 S.W.2d 621, 622 (Tex.1997); *Friday*, 610 S.W.2d at 750; *Rogers*, 561 S.W.2d at 173; *Langdeau*, 341 S.W.2d at 163.

12. 960 S.W.2d 621 (Tex.1997).

13. That section provides:

A judgment in an action or settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gives rise to the claim.

TEX. CIV. PRAC. & REM.CODE § 101.106.

14. 919 S.W.2d 929, 932 (Tex.App.—Houston [14th Dist.] 1996, writ denied).

15. 846 S.W.2d 84, 88 (Tex.App.—Dallas 1992, no writ).

16. 960 S.W.2d at 622; *see also Rogers*, 561 S.W.2d at 173 (finding a conflict where factual differences were "without materiality or significance"); *Langdeau*, 341 S.W.2d at 163 (finding conflict between factually dissimilar cases on question of whether federal banking statute superseded Texas venue statutes).

17. 673 S.W.2d 928 (Tex.App.—Dallas 1984, writ dism'd w.o.j.).

18. *Id.* at 933.

and property damage.[19] The plaintiffs asserted causes of action for nuisance, trespass, strict liability, intentional tort, and negligence.[20] After the trial court certified a class of residential property owners within a two-mile radius of the lead smelter, RSR took an interlocutory appeal. The court of appeals reversed the class-certification order because "common" questions did not predominate over individual issues.[21]

Coastal argues that RSR and this case are so similar that this Court has conflict jurisdiction. For example, Coastal points out that the plaintiffs in both cases complained that airborne contaminants adversely affected residential property values. The causes of action alleged in both cases significantly overlapped. Additionally, Coastal notes that in both cases the plaintiffs offered expert testimony in the form of isoplethic maps— maps with concentric circles indicating levels of pollution—to depict contamination levels. Moreover, Coastal asserts that in both cases, the effects of the contaminants varied depending on the property's location. In short, Coastal contends that, with the exception of the personal injury claims at issue in RSR, the courts of appeals in both cases answered exactly the same questions about commonality, and that because the courts reached different conclusions, this Court has conflict jurisdiction.

We disagree. This case does not meet the statutory standards for conflict jurisdiction. The decision in RSR does not "hold[ ] differently" from the court of appeals' decision in this case on "a question of law material to a decision of the case."[22]

First, RSR involved certification of personal injury claims in addition to the property claims; this case does not. The RSR court noted that the undisputed facts in that case demonstrated that lead poisoning affects people differently depending on their unique characteristics. Thus, it held that "the questions concerning a class plaintiff's personal injuries and RSR's liability thereon are not questions common to the class...."[23] Here, the trial court refused to certify any personal injury claims. While RSR might fairly be read to blur the distinction between personal injury and property damage claims, we still cannot say that the court of appeals in RSR held differently than the decision here. As one mass-tort scholar has explained, "personal injury mass tort class actions need to be distinguished from property damage class actions. The latter have been more frequently certified and inherently tend to involve both greater homogeneity among class members and greater commonality in their factual issues."[24] Because this case does not involve certification of personal injury claims, we cannot say that the decisions are in conflict on a material question of law such that this Court has conflict jurisdiction.

Second, the rather complex subclass structure created by the trial court in this case makes it different from the single class at issue in RSR. The RSR court had concluded that a finding of RSR's liability to one set of class members would not mean that it was liable to another set.[25] Here, the subclass structure may produce the commonality of issues that the RSR court found lacking. And whether it does or does not produce commonality, the subclass structure renders this case factually and legally distinct from RSR. An order certifying two classes, each

---

19. Id. at 929–30.

20. Id.

21. Id. at 933; see also Tex.R. Civ. P. 42(b)(4).

22. Tex Gov't Code § 22.001(a)(2); see also Christy, 298 S.W.2d at 567.

23. RSR, 673 S.W.2d at 933.

24. John C. Coffee, Jr., Class Wars: The Dilemma of Mass Tort Class Action, 95 Colum. L.Rev. 1343, 1344 n. 2 (1995); see also In re School Asbestos Litigation, 789 F.2d 996, 1010 (3d Cir.1986) (noting that another asbestos case involved more difficult commonality issues "because of the complexity of the causation questions in personal injury suits"); Heather M. Johnson, Note, Resolution of Mass Product Liability Litigation Within the Federal Rules: A Case for the Increased Use of Rule 23(b)(3) Class Actions, 64 Fordham L. Rev. 2329, 2329 n. 2 (1996) ("Mass torts involving property damage often involve greater homogeneity among class members, greater commonality of factual issues, and are more likely to be certified as class actions.").

25. RSR, 673 S.W.2d at 933.

with several subclasses, of property damage plaintiffs simply poses different questions than an order certifying a single class of personal injury and property damage plaintiffs.

Finally, there was undisputed evidence in *RSR* that "within a significant area of the geographic class, 70% of the class members d[id] not have hazardous levels of lead on their land."[26] In this case, however, there is evidence supporting the contention that all members of the class have been damaged in some way by contaminants. Particularly when coupled with the subclass structure, this distinction between *RSR* and this case further supports our conclusion that the decisions are not in "conflict" as that term is statutorily defined for purposes of conflict jurisdiction.

\* \* \* \* \*

In short, the courts of appeals in *RSR* and in this case did not "hold differently" on the same "question of law." Thus, this Court cannot exercise conflict jurisdiction over this interlocutory appeal. We therefore withdraw our order granting the applications for writ of error as improvidently granted and dismiss this appeal for want of jurisdiction.

HANKINSON, J., did not participate in the decision.

HECHT, Justice, joined by GONZALEZ and OWEN, Justices, dissenting.

As careful as the Court is not to exercise jurisdiction it does not have, it must be equally careful to exercise all the jurisdiction it does have, for error on either side violates the constitution equally. "[I]t is a time-hon-

ored maxim of the Anglo–American common-law tradition that a court possessed of jurisdiction generally must exercise it."[1] In oft-quoted language as clear as it is eloquent, the great Chief Justice Marshall explained in *Cohens v. Virginia:*

> It is most true that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution.[2]

Less eloquently, but no less clearly, our commission of appeals echoed over seventy years ago, "courts cannot either decline jurisdiction nor assume that which is not conferred."[3] As applied to original jurisdiction, the principle has important exceptions, including the several abstention doctrines in federal courts,[4] the doctrine of *forum non conveniens,*[5] actions in which the forum cannot provide appropriate relief,[6] actions based on foreign penal laws or laws contrary to the forum's strong public policy,[7] and practical limitations on the United States Supreme Court's original jurisdiction.[8] But there neither is nor should be any exception to the principle as applied to an appellate court's exercise of its appellate jurisdiction.

**26.** *Id.* at 932.

**1.** *Ohio v. Wyandotte Chems. Corp.,* 401 U.S. 493, 496–497, 91 S.Ct. 1005, 28 L.Ed.2d 256 (1971).

**2.** 19 U.S. (6 Wheat.) 264, 400, 5 L.Ed. 257 (1821).

**3.** *Stewart v. Moore,* 291 S.W. 886, 891 (Tex. Comm'n App.1927, holding approved).

**4.** 17A Charles Alan Wright et al., Federal Practice and Procedure §§ 4241–4255 (1988); 17 James Wm Moore et al , Moore's Federal Practice ch. 122 (3d ed.1998).

**5.** *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Flaiz v. Moore,* 359 S.W.2d 872, 874 (Tex.1962); *In re Smith Barney,* 975 S.W.2d 593 (Tex.1998). *See* Restatement (Second) of Conflict of Laws § 84 (1971).

**6.** Restatement (Second) of Conflict of Laws § 85 (1971).

**7.** *Id.* at §§ 89–90.

**8.** *Wyandotte Chems. Corp.,* 401 U.S. at 499, 91 S.Ct. 1005.

As the Court explains, we have statutory jurisdiction of an interlocutory appeal if the court of appeals "holds differently" from a prior decision of another court of appeals or this Court.[9] The Legislature originally conferred this jurisdiction on the Court in 1953.[10] Until then, the Court's writ-of-error jurisdiction over interlocutory appeals had been restricted to orders granting or denying temporary injunctions in cases over which the Court would have jurisdiction in an appeal from the final judgment.[11] The "holds differently" standard in the 1953 statute was first used in the 1891 amendment to Article V, Section 3 of the Texas Constitution, which provided that until otherwise provided by law, " 'the appellate jurisdiction of the supreme court shall extend to questions of law arising in the cases ... where the several courts of civil appeals may hold differently on the same question of law....' "[12] The phrase was also used in an 1892 statute[13] and a 1913 statute[14] prescribing this Court's jurisdiction. These and other pre–1953 statutes also used standards other than "holds differently" to give this Court appellate jurisdiction in cases when the court of civil appeals' decision conflicted with a decision of another such court or this Court. This Court consistently construed such jurisdiction strictly, although it had few occasions to apply the "holds differently" standard[15] until after the 1953 statute in *Christy v. Williams*.[16] Drawing on cases involving different conflict jurisdiction standards, we explained:

> For this Court to have jurisdiction on the ground of conflict it must appear that the rulings in the two cases are "so far upon the same state of facts that the decision of one case is necessarily conclusive of the decision in the other." *Dockum v. Mercury Ins. Co.*, 134 Tex. 437, 135 S.W.2d 700, 701. Or, "in other words, the decisions must be based practically upon the same state of facts, and announce antagonistic conclusions." *Sun Mut. Ins. Co. v. Roberts, Willis & Taylor Co.*, 90 Tex. 78, 37 S.W. 311, 312 [(1896)]. "An apparent in-

9. Tex. Const. art. V, § 3 (stating that the Supreme Court's appellate jurisdiction extends to all civil cases except as provided by law); Tex Gov't Code § 22.001(a)(2) (stating that the Supreme Court has jurisdiction over appeals when the court of appeals "holds differently from a prior decision of another court of appeals or of the supreme court on a question of law material to a decision of the case"); *id.* § 22.225(b)(3) & (c) (stating that a court of appeals' judgment is final in interlocutory appeals except when the court of appeals "holds differently" from another court of appeals or the Supreme Court as provided in Section 22.001(a)(2), and in certain other situations).

10. Act of May 19, 1953, 53rd Leg., R.S., ch. 424, § 1, 1953 Tex. Gen. Laws 1026.

11. *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 254 (Tex.1983). *See Torrez v. Maryland Cas. Co.*, 363 S.W.2d 235, 236 (Tex.1962) (explaining that the primary objective of the 1953 amendments was " 'to substitute the comparatively simple writ of error for the complicated mandamus-certified question practice in certain types of cases, such as divorce and slander cases and appeals from interlocutory orders' ") (citation omitted).

12. *See Schintz v. Morris*, 89 Tex. 648, 35 S.W. 1041, 1041 (1896).

13. *See Holland v. Nimitz*, 111 Tex. 419, 239 S.W. 185, 186 (1922).

14. Act of March 26, 1913, 33rd Leg., R.S., ch. 55, § 1, 1913 Tex. Gen. Laws 107, then codified as Tex Rev.Civ. Stat. art. 1521 (1913).

15. *See, e.g., Hanway v. Galveston, H & S.A. Ry. Co.*, 94 Tex. 76, 58 S.W. 724, 724–725 (1900), applying the exception allowing jurisdiction over remanded cases in which a court of civil appeals "holds differently" from another:

> Where there is a distinction between two questions, but that distinction is clearly of such a character as not to lead to a different determination, the questions, it seems to us, are the same. But if there be facts in the one case which are not in the other, and which are entitled to weight and consideration in deciding the matter in which they appear, the cases, in our opinion, are different. It is not for us to determine in this proceeding whether the difference in the facts stated by the court of civil appeals in the opinion in the present case is or is not such as ought to lead to a different decision of the two cases. We merely hold that the difference is a substantial one,—that the questions are not the same,—and that, therefore, we are without power to grant the writ of error prayed for.

*See also Malone v. Dawson*, 117 Tex. 377, 5 S.W.2d 965, 967 (1928).

16. 156 Tex. 555, 298 S.W.2d 565 (1957).

consistency in the principles announced, or in the application of recognized principles, is not sufficient." *Garitty v. Rainey*, 112 Tex. 369, 247 S.W. 825, 827 [(1923)].

\* \* \*

For jurisdiction to attach on the basis of conflict "The conflict must be on the very question of law actually involved and determined, in respect of an issue in both cases, the test being whether 'one would operate to overrule the other in case they were both rendered by the same court.'" *West Disinfecting Co. v. Trustees*, 135 Tex. 492, 143 S.W.2d 749, 750 [(Tex.Com.App. 1940)].[17]

None of the statutes construed in the cases on which *Christy* relied used the "holds differently" standard. *Sun Mutual Insurance Co. v. Roberts, Willis & Taylor Co.* construed a statute giving this Court jurisdiction in "[c]ases in which a civil court of appeals *overrules* its own decisions or the decision of another court of civil appeals or of the supreme court.'"[18] *Garitty v. Rainey* construed a statute requiring "Courts of Civil Appeals, whenever in any cause pending they reach a conclusion *in conflict with* an opinion theretofore rendered by another Court of Civil Appeals ... to certify such conflict to the Supreme Court."[19] *Dockum v. Mercury Insurance Co.* construed a statute making conclusive a court of appeals' decision in a case in which a county court would have original jurisdiction unless it involved "'*conflicts* between decisions of the Courts of Civil Appeals or between a decision of a Court of Civil Appeals and a decision of the Supreme Court.'"[20] *West Disinfecting Co. v. Trust-*

*ees of Crosby Independent School District* construed the same statute as in *Dockum*.[21]

But *Christy*'s strict construction of "holds differently" was consistent with earlier cases construing "overrules" and "conflicts with" standards in different jurisdictional statutes. That construction has continued unchallenged for over forty years since *Christy*, through amendments to and recodifications of the jurisdictional statutes, and should not now be disturbed. I agree with the Court, however, that application of the statutory language should be freed from the confusion in some of our cases caused by *Christy*'s infelicitous references to the factual bases of decisions. As the Court now makes clear:

> cases do not conflict if a material factual difference legitimately distinguishes their holdings. On the other hand, immaterial factual variations do not preclude a finding of jurisdictional conflict. A conflict could arise on very different underlying facts if those facts are not important to the legal principle being announced.[22]

Thus, the test of this Court's jurisdiction under Section 22.001(a)(2) of the Government Code is whether the court of appeals' decision on a material point of law is so contrary to the decision of another appeals court or this Court, disregarding unimportant factual distinctions, that if both decisions were made by one court, the later would have to overrule the earlier.

The conflict between the Thirteenth Court of Appeals' decision in this case[23] and the Fifth Court of Appeals' decision in *RSR Corporation v. Hayes*[24] satisfies this test. In *RSR*, the district court certified a class of landowners within two miles of a lead smelter who claimed property damages and per-

---

17. *Id.* at 567, 568–569 (citation omitted).

18. 90 Tex. 78, 37 S.W. 311, 312 (1896) (emphasis added).

19. 112 Tex. 369, 247 S.W. 825, 826–827 (1923) (emphasis added) (citing *Coultress v. City of San Antonio*, 108 Tex. 150, 179 S.W. 515, 516 (1915), which quoted the statutory provision). *See also Harris v. Willson*, 122 Tex. 323, 59 S.W.2d 106, 108 (Tex.Com.App.1933)*; Layton v. Hightower*, 118 Tex. 166, 12 S.W.2d 110, 110–111 (Tex.Com. App.1929); *American Nat. Bank v. Hall*, 114 Tex. 164, 265 S.W. 378, 380 (Tex.Com.App.1924).

20. 134 Tex. 437, 135 S.W.2d 700, 700–701 (Tex. Com.App.1940) (emphasis added, citation omitted).

21. 135 Tex. 492, 143 S.W.2d 749, 750 (Tex.Com. App.1940).

22. *Ante* at 323.

23. 979 S.W.2d 318.

24. 673 S.W.2d 928 (Tex.App.—Dallas 1984, writ dism'd).

sonal injuries caused by airborne emissions from the smelter. The court of appeals reversed, holding that whether the smelter's emissions caused any property damage could only be determined tract by tract, and thus law and fact issues common to all class members did not predominate over issues affecting only individual members, as required by Rule 42(b)(4) of the Texas Rules of Civil Procedure. In the present case, the district court certified sixteen subclasses together containing some 2,500 landowners in a six-square-mile area, grouped by location, date of acquisition, and alleged type of contamination, who claim property damages caused by airborne chromium and benzene emissions and groundwater pollution from ten unrelated nearby industrial facilities owned or operated by twenty-seven defendants. If common issues of law and fact did not predominate in *RSR* because of the necessity of proving the damage to each tract by a single pollutant from a single source, they cannot possibly predominate in the present case involving three pollutants from ten sources. If common issues of law and fact predominate in the present case, then they surely predominated in *RSR*, and that case was wrongly decided. The decisions in *RSR* and the present case cannot both be right. One court could not decide them both without overruling *RSR*.

The Court identifies three distinctions between the present case and *RSR*. The first is that *RSR* involved both property damage and personal injury claims, whereas the present case involves only property damage claims. But *RSR* did not conclude that class certification was improper because it included personal injury claims. Rather, the court considered the two types of claims separately and found that they shared the same problem: common issues did not predominate. Having determined that the property damage claims were not suitable for class treatment, the court concluded that the personal injury claims were also not suitable for class certification for the very same reason. Following an extensive discussion of the property damage claims, the court addressed the

personal injury claims in one short paragraph at the end of its opinion.[25] No fair reading of *RSR* can conclude that the class certification was reversed because plaintiffs asserted personal injury claims. *RSR* reversed the class certification because common issues did not predominate on any of plaintiffs' claims. It is true, as the Court says, that property damage claims may be more homogenous among class members than personal injury claims, but that observation does not explain the result in *RSR*. Even if property claims tend to be more homogenous than personal injury claims, property claims in particular circumstances may not be sufficiently similar that issues common to the claimants predominate. *RSR* held that issues affecting only individual members predominated for both property damage and personal injury claims. The same thing is true in this case. Some property claims could be asserted by a class; those in *RSR* and the present case are not among them.

The second distinction the Court draws between the present case and *RSR* is that the latter involved a single class whereas the former involves, in effect, sixteen separate classes. But the Court pointedly does not say that the division of class members into sixteen subclasses results in common issues predominating, which is the only fact that could make the distinction material. From the record, there is no indication that sixteen or even sixty subclasses could result in groups small enough that common issues would predominate. Remarkably, the Court states: "whether it does or does not produce commonality, the subclass structure renders this case factually and legally distinct from *RSR*."[26] This conclusion plainly contradicts the Court's test requiring that immaterial facts be disregarded. If the use of subclasses does not promote sufficient predomination of common issues among subclass members to satisfy Rule 42(b)(4), and the Court does not and cannot conclude that it does, then the use of subclasses is irrelevant.

The third distinction the Court finds is that "there was undisputed evidence in *RSR*

**25.** 673 S.W.2d at 933.

**26.** *Ante* at 321.

that 'within a significant area of the geographic class, 70% of the class members d[id] not have hazardous levels of lead on their land.' "[27] The court in *RSR* summarized an expert's data, represented by an isopleth map, which showed "what percentage of the soil samples taken from an area around the RSR smelter contained 1,000 parts of lead per million."[28]

> The map contained four isopleths. The inside circle represented an area where 84% of the soil samples taken contained more than 1,000 parts per million. The second circle represented an area where 50% of the samples taken exceeded 1,000 parts per million. The third circle designated an area where only 30% of the soil samples exceeded 1,000 parts per million. This 30% isopleth closely paralleled the geographic boundary of the class which the trial court certified. The experts testified that the level of lead deposits varied on any given piece of property located within the geographic boundaries of the certified class. The undisputed expert testimony showed that *within the 30% isopleth, 70% of the soil samples taken would not contain hazardous levels of lead.*[29]

But just as alleged airborne contamination levels in *RSR* declined as the distance of property from the smelter increased, so airborne contamination levels in this case decline with the distance from the various sources. Indeed, the district court structured subclasses based on the location of the property with respect to the facilities. In this regard, the present case and *RSR* are alike—not different.

The class claims of property damages in *RSR* were simpler in every respect than those claims in the present case. The personal injury claims in *RSR* were not the reason the court reversed class certification. The court concluded that common issues did not predominate with respect to either type

of claims. If *RSR* was correctly decided, then the present case is wrongly decided and in direct conflict. Because the Court has jurisdiction of the case, it is constitutionally required to exercise it. The Court is not, of course, required to give the case plenary consideration—although it certainly should—but it cannot dismiss the case for want of jurisdiction.

This case is important to the State's jurisprudence because it involves an attempt to establish liability and causation collectively by groups of claimants, despite indisputable differences in each tract allegedly contaminated. The Court should grant the application for writ of error, set oral argument, and give the important issues raised plenary consideration. Because it does not do so, I respectfully dissent.