**WAGNER & BROWN, Limited and Canyon Energy, Inc., Petitioners,**

v.

**Lonnie HORWOOD and David Lawrence Glass, Respondents.**

**No. 99–0946.**

Supreme Court of Texas.

April 12, 2001.

Harper Estes, M. Michele Greene, Steven C. Kiser, Lynch Chappell & Alsup, Midland, Alex Wilson Albright, Austin, Jack Ratliff, Blanco, Pamela Stanton, Austin, for petitioners.

George S. Finley, Smith Rose Finley Harp & Price, San Angelo, Levon G. Hovnatanian, Martin Disiere & Jefferson, Robert Herring, Fleming & Associates, Mark A. Hovenkamp, Grayson Hovenkamp & Petroski, for respondents.

Justice HECHT, joined by Justices OWEN, and ABBOTT, dissenting from the denial of the motion for rehearing of the petition for review.

Lonnie Horwood and David Glass brought suit on behalf of some 250 royalty interest owners under oil and gas leases to Wagner & Brown, Ltd. Plaintiffs allege that between 1985 and 1995 Wagner & Brown paid its general partner, Canyon Energy, Inc., excessive gathering and compression charges and consequently underpaid royalties. The district court refused to certify a class under Rule 42(b)(1)(A), and plaintiffs appealed.[1] The court of appeals reversed, holding in an unpublished opinion that the district court had abused its discretion.[2] This Court dismissed defendants' petition for review for want of jurisdiction.[3]

This Court has jurisdiction over an interlocutory appeal like this one if the court of appeals "holds differently" from the prior decision of another court of appeals.[4] Petitioners argue that the court of appeals in this case holds differently from other courts of appeals on the proper construction of Rule 42(b)(1)(A), which states:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition ... the prosecution of separate actions by or against individual members of the class would create a risk of ... inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards

of conduct for the party opposing the class....

Texas courts of appeals are split over whether the risk required by the rule is that individual actions may result in a legal quagmire of judgments so inconsistent that compliance with one would violate another, or only that in individual actions some plaintiffs might recover and others not. The Sixth Court of Appeals took the former position in *St. Louis Southwestern Railway v. Voluntary Purchasing Groups, Inc.*, where it held that a class of plaintiffs complaining of discharges from a toxic waste dump could not be certified under Rule 42(b)(1)(A) because:

> When the only risk is that some plaintiffs may win while others may lose on identical facts, the problem of inconsistent or varying adjudications is not raised. That portion of the rule applies to situations where inconsistent judgments in separate suits places a defendant in the position of not being able to comply with one judgment without violating the terms of another.[5]

Likewise, the Twelfth Court of Appeals held in *Peltier Enterprises, Inc. v. Hilton*, that the trial court abused its discretion in certifying an injunction class of plaintiffs complaining of auto dealer "participation fees", citing *St. Louis Railway.*[6] These two decisions are consistent with the federal courts' construction of Rule 23(b)(1)(A) of the Federal Rules of Civil

---

1. Tex. Civ. Prac. & Rem.Code § 51.014(a)(3) ("A person may appeal from an interlocutory order of a district court, county court at law, or county court that ... certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure....").

2. *Horwood v. Wagner & Brown, Ltd.*, No. 08–98–00172–CV (Tex.App.—El Paso 1999) (unpublished op.).

3. 44 Tex. Sup.Ct. J. 52 (Nov. 9, 2000).

4. Tex. Gov't Code § 22.225(c).

5. 929 S.W.2d 25, 32 (Tex.App.—Texarkana 1996, no writ) (citing *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 306 (6th Cir.1984)).

6. 51 S.W.3d 616 (Tex.App.—Tyler 2000, pet. filed).

Procedure,[7] from which the Texas rule was copied. However, other Texas courts, beginning with the Second Court of Appeals in *Adams v. Reagan*,[8] have taken the latter position.[9]

Without expressly taking sides in this debate or citing either line of authority, the court of appeals in the present case concluded that there was more at risk than "that one royalty owner might win while another royalty owner might lose". What more? According to the court of appeals, "the doctrine of res judicata demands that the issues will be decided as to all royalty owners in the field whose leases contain similar or identical issues." No authority is cited in support of this assertion, and it is simply not so. A judgment in a suit by one royalty owner would not be res judicata of another's identical claims.[10] The court added: "differing results in separate suits would allow Wagner & Brown to charge some royalty owners the compression charges in controversy while prohibiting Wagner & Brown from charging other royalty owners the same compression charges, despite the fact that all of the parties' rights are established under identical clauses in the oil, gas, and mineral leases." In other words, some plaintiffs might win and others lose. Wagner & Brown faces no legal quagmire if it is simply ordered to pay some plaintiffs royalties based on a higher compression charge and others based on a lower charge. Complying with one individual judgment would not put Wagner & Brown in violation of another. The court of appeals did not cite *Adams*, but it came to the same result.

By any reasonable view, the court of appeals' decision in this case "holds differently" from the court of appeals' decision in *St. Louis Railway*. The latter court could not have meant what it said and have reached the same decision as the former court. But this Court has never taken a reasonable view of "holds differently" since the Legislature first used that phrase to define our jurisdiction in 1891.[11] Our unshaken view of what we have come to call "conflicts jurisdiction" but is really "conflicts *non*-jurisdiction" has been hypertechnically narrow,[12] motivated by a jurisdiction-avoidance determination that has no regard for the obvious, prudential, and entirely salutary purpose of the power granted by the Legislature, which is to resolve important legal disputes among the courts of appeals so that Texas law is not one thing for litigants in one of fourteen court of appeals districts and a different thing for litigants in other districts. The closest we have come to anything like a common-sense approach in applying our conflicts jurisdiction rules was in *Bland Independent School District v. Blue*, where we took jurisdiction of an interlocu-

7. 7A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1772 (2d ed.1986).

8. 791 S.W.2d 284, 293 (Tex.App.—Fort Worth 1990, no writ).

9. *See FirstCollect, Inc. v. Armstrong*, 976 S.W.2d 294, 303 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.) (citing *Adams*); *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836, 845 (Tex.App.—Houston [14th Dist.] 1996, no writ) (citing *Adams* ).

10. *See Pustejovsky v. Rapid–American Corp.*, 35 S.W.3d 643, 651 (Tex.2000); *see also*

*HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 889–890 (Tex.1998) (collateral estoppel).

11. *Coastal Corp. v. Garza*, 979 S.W.2d 318, 323 (Tex.1998) (Hecht, J., dissenting).

12. *See, e.g., Resendez v. Johnson*, 52 S.W.3d 689 (Tex.2001); *Gross v. Innes*, 988 S.W.2d 727 (Tex.1998); *Certain Underwriters at Lloyd's v. Celebrity, Inc.*, 988 S.W.2d 731 (Tex. 1998); *Coastal Corp. v. Garza*, 979 S.W.2d 318 (Tex.1998); *see also Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 449 (Tex.2000) (citing cases).

tory appeal because the court of appeals' holding was fundamentally at odds with our holding in another case, even though we had not addressed the determinative issue expressly in our opinion.[13]  In *Bland,* as in this case, the conflict in decisions was obvious and indisputable, yet the argument was made that that conflict was insufficient to invoke our jurisdiction.[14]  In the present case, the Court without explanation ignores a conflict that is plain as day and thus rejects a common-sense determination of jurisdiction.

The motion for rehearing argues so compellingly against the Court's non-jurisdiction view of its jurisdiction that it deserves to be quoted at length:

> The Texas Legislature could have simply denied outright to this Court any and all jurisdiction over interlocutory appeals.  It did not.  Instead, it gave this Court jurisdiction in situations where a higher authority was needed to resolve disputes: when courts of appeals disagree by holding differently.  TEX. GOV'T CODE § 22.225(c).  In giving this Court the power to act as arbiter, the Legislature no doubt expected the Court to use it.

> In the last decade, however, this Court has accepted conflicts jurisdiction over an interlocutory appeal only three times.  *See Bland Indep. School Dist. v. Blue,* 44 Tex. Sup. Ct. J. 125, [34 S.W.3d 547] (2000); *Southwestern Refining Co. v. Bernal,* 22 S.W.3d 425 (Tex.2000); *Newman v. Obersteller,* 960 S.W.2d 621 (Tex.1997).  This Court's exercise of conflicts jurisdiction is thus more rare

than a blue moon (5 in the last 10 years), a total eclipse of the sun (6 in the past decade), or the birth of a Giant Panda in captivity (18 in 1999 alone, 15 of which survived).  As a simple matter of statistics, given the size of the dockets of the intermediate appellate courts, one would expect far more than three conflicting interlocutory decisions in a decade. This is especially true now given the recent and extensive legislative expansion of the jurisdiction of the courts of appeals over a wider variety of interlocutory orders.  TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7) (allowing interlocutory appeal of order on special appearance, effective June 1997); § 51.014(a)(8) (allowing interlocutory appeal of order on governmental unit's plea to the jurisdiction, effective June 1997); § 15.003 (permitting appeal of interlocutory order on joinder or intervention, effective August 1995); *see also City of Houston v. Lazell–Mosier,* 5 S.W.3d 887, 890 n. 8 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (noting "the considerable increase of interlocutory appeals to the already overcrowded dockets of our courts of appeals").

Not only is this Court's conflicts jurisdiction more endangered than the Giant Panda, it is not predictable.  Litigants, attorneys, and lower appellate courts cannot know with any reasonable certainty when a case is likely to be accepted on the basis of a conflict.[15]  Even the Court itself appears uncertain.  *In this calendar year alone, the Court has requested full briefing on the merits in nine cases before dismissing them for*

---

13.  34 S.W.3d 547 (Tex.2000).

14.  *Id.* at 558–559 (Phillips, C.J., dissenting).

15.  *See* Jeremy C. Wicker, 32 CIVIL TRIAL AND APP. PROC. 20 (West 1985) ("The Supreme Court has not always had an easy time of applying this [conflicts] test."); *see also* Pamela Stanton Baron, *Pre–Judgment Fast*

*Track Part I: Interlocutory Appeals in State Courts,* State Bar of Texas, 23rd ANNUAL ADVANCED CIVIL TRIAL COURTS at 6A–14 (Fall 2000) ("Recent decisions from the Supreme Court have demonstrated a sharp split of opinion on how strictly conflict jurisdiction is to be construed.").

*want of jurisdiction .*[16] Not surprisingly, some of the state's leading appellate practitioners have been perplexed in trying to divine the reasoning behind these unexplained dismissal orders.[17]

Under the Court's conflicts jurisprudence, both explained and unexplained, it appears that the two primary obstacles to exercising jurisdiction have been: (1) viewing most any factual difference between the conflicting cases as material; and (2) looking to whether the opinion seems to correctly recite the law, without regard to whether it properly applied it. *See, e.g., Bland Indep. School Dist. v. Blue,* 44 Tex. Sup. Ct. J. 125, [34 S.W.3d 547] (2000) (Phillips, C.J., dissenting); *Coastal Corp. v. Garza,* 979 S.W.2d 318, 322–326 (Tex. 1998) (Hecht, J., dissenting); *E.I. Du Pont de Nemours & Co. v. Abernathy,* No. 99–0246 (Motion for Rehearing, urging Court to exercise conflict jurisdiction and not to allow "finite factual distinctions" to impair review but to find conflict based on the way legal principles are applied to the core facts). This approach catapults form over substance to deny appellate review on the merits, an approach this Court has consistently and vigorously rejected in the interlocutory appeal context. *See, e.g., Surgitek v. Abel,* 997 S.W.2d 598, 601 (Tex.1999) (rejecting formalistic approach to whether order is reviewable by interlocutory appeal): *Del Valle Indep. School Dist. v. Lopez,* 845 S.W.2d 808, 809 (Tex.1992) (court must look to character and function of order and not its title); *Qwest Communications Corp. v. AT & T Corp.,* 24 S.W.3d 334, 336–337 (Tex.2000) (per curiam) (looking to substance and not form of order). And, even worse, the effect of this approach is to abdicate this Court's power to determine its own jurisdiction and to vest that power instead in the hands of the court of appeals' justice who writes the opinion below. (Footnotes and emphasis in text.) As the motion shows, the rarity of our exercise of conflicts jurisdiction cannot be attributed to the lack of disagreements among the appellate courts; rather, it is attributable to our refusal to resolve those disagreements.

Even under our strained precedents, the court of appeals' decision in this case conflicts with *St. Louis Railway* and *Peltier.*[18] But more importantly, to deny reasonable guidance to the trial courts, the courts of appeals, and litigants across the State is to abdicate our constitutional, legislatively mandated responsibility. I would grant the motion for rehearing and set oral argument on the merits. Accordingly, I respectfully dissent.

---

16. *See E.I. Du Pont de Nemours & Co. v. Abernathy,* No. 99–0246; *Hidalgo Irrigation Dist. v. Ortega,* No. 99–0754; *Texas Alcoholic Beverage Comm'n v. Amusement and Music Operators,* No. 99–0896; *Wagner & Brown, Ltd. v. Horwood,* No. 99–0946; *Dallas Indep. School Dist. v. Lee,* No. 99–1240; *Carrera v. Yepez,* No. 99–1259; *University of Houston v. Elthon,* No. 00–0044; *Blum v. Brown,* No. 00–0110; *Exxon Co., U.S.A. v. Jack O. McCall Estate,* No. 00–0541. This latter case also sought review of an unpublished opinion from the El Paso Court of Appeals involving class certification of a group of royalty owners.

17. *See E.I. Du Pont deNemours & Co. v. Abernathy,* No. 99–0246 (Motion for Rehearing filed by Mike Hatchell, urging Court to exercise conflict jurisdiction); *cf. Coastal Corp. v. Garza,* No. 96–1208 (Motion for Rehearing filed by UT Law School Dean William Powers, Jr. and State Bar President Lynne Liberato, to same effect).

18. *Coastal Corp. v. Garza,* 979 S.W.2d 318, 319–320 (Tex.1998).