Robby COLLINS, Robert Hinkle,
Jon Dahlander, and Robert
Payton, Petitioners,

v.

Shirley ISON–NEWSOME, Respondent.

No. 00–0277.

Supreme Court of Texas.

Argued March 21, 2001.

Decided Dec. 13, 2001.

John A. Martin, Christopher John Akin, Lyndon F. Bittle, Carrington Coleman Sloman & Blumenthal, Grant Daniel Erhard, Dallas, for petitioners.

William A. Brewer, III, Scott S. Hershman, Bickel & Brewer, Jamie R. Welton, Bickel & Brewer Storefront, K.C. Allan, Dallas, respondent.

Justice HANKINSON delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice BAKER, and Justice O'NEILL joined.

This cause arises out of an interlocutory appeal from the denial of a motion for summary judgment by a professional school-district employee based on immuni-ty under section 22.051 of the Education Code. *See* Tex. Educ.Code § 22.051(a). However, we cannot reach the merits because we conclude that we do not have jurisdiction over this interlocutory appeal. Accordingly, we withdraw our order granting the petition as improvidently granted and dismiss the petition for want of jurisdiction.

Shirley Ison–Newsome, a Dallas Independent School District administrator, filed this lawsuit contending that General Superintendent Yvonne Gonzalez,[1] Associate and Assistant Superintendents Robby Collins, Robert Hinkle, and Robert Payton, and Executive Director of Media Relations John Dahlander, conspired to defame her and intentionally inflict emotional distress on her when they spoke to the press about a controversy surrounding renovation of Ison–Newsome's offices. The defendants moved for summary judgment, claiming that they were immune from liability under section 22.051(a) of the Education Code, which provides:

A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

Tex. Educ.Code § 22.051(a). The trial court denied the motion, and the defendants filed an interlocutory appeal from the trial court's order. *See* Tex. Civ. Prac. & Rem.Code § 51.014(5) (allowing an interlocutory appeal from the denial of a summary-judgment motion asserting immunity

1. Ison–Newsome has since nonsuited her claims against Gonzalez.

by an officer or employee of the state or a political subdivision of the state).

In the court of appeals, the parties focused on whether the defendants were acting incident to or within the scope of their duties when they made the allegedly defamatory statements to the press. The defendants argued that their summary-judgment evidence conclusively established that they were acting within the scope of their duties because their affidavits established that they committed the allegedly wrongful acts while discharging duties generally assigned to them. Ison–Newsome, on the other hand, argued that an intentional tort can never be within the scope of an employees' duties. The court of appeals did not decide whether the Education Code provides immunity for any act of a professional school-district employee. Instead, it held that the defendants were not entitled to summary judgment because their affidavits did not conclusively prove that they were acting within the scope of their duties. Accordingly, the court of appeals unanimously affirmed the trial court's order. 68 S.W.3d 2. The defendants petitioned for review.

■ Our jurisdictional analysis begins with the basic principle that we do not have jurisdiction in the absence of an express constitutional or legislative grant. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex.1996). The Legislature has determined that jurisdiction over interlocutory appeals is generally final in the courts of appeals. TEX. GOV'T CODE § 22.225(b)(3). However, the Legislature created exceptions to that general rule for certain interlocutory appeals, including those meeting the conflicts standard of Government Code § 22.001(a)(2). That standard is met and this Court has conflicts jurisdiction over interlocutory appeals when "one of the courts of appeals holds differently from a prior decision of another court of appeals

or of the supreme court on a question of law material to a decision of the case." *Id.* § 22.001(a)(2); *see id.* § 22.225(c).

■ The defendants assert that we have conflicts jurisdiction in this case, claiming that the court of appeals' decision here conflicts with *Enriquez v. Khouri*, 13 S.W.3d 458 (Tex.App.-El Paso 2000, no pet.), and *Williams v. Chatman*, 17 S.W.3d 694 (Tex.App.-Amarillo 1999, pet. denied). The defendants also identified two unpublished opinions involving the same immunity statute. As Texas Rule of Appellate Procedure 47.7 mandates that unpublished opinions "have no precedential value and must not be cited as authority by counsel or by a court," we limit our jurisdictional analysis to whether the court of appeals' opinion in this case conflicts with *Enriquez* or *Williams*. We conclude that neither *Enriquez* nor *Williams* creates a conflict sufficient to confer jurisdiction on this Court.

■ *Enriquez* cannot support conflicts jurisdiction because it was decided after the court of appeals decided this case. *See Enriquez*, 13 S.W.3d at 458. We have conflicts jurisdiction only when "one of the courts of appeals holds differently from a prior decision of another court of appeals...." TEX. GOV'T CODE § 22.001(a)(2); *see id.* § 22.225(c). Because *Enriquez* is not a "prior decision" of another court of appeals, under the statute's plain language, the court of appeals in this case could not have "held differently" than the court in *Enriquez* when it issued its opinion in this case. *See* TEX. GOV'T CODE § 311.011 (directing courts to give words and phrases their ordinary meaning under the rules of grammar and common usage).

■ Nor does this case conflict with *Williams*. In *Williams*, the parents of a student who drowned at a school-sponsored pool party sued several school-dis-

trict employees, among others, claiming that the employees were negligent and grossly negligent in supervising the students. The school employees moved for summary judgment claiming immunity under section 22.051 of the Education Code. The parents argued that the employees were not acting within the scope of their duties and were therefore not protected by immunity because: "(1) the party was not on school property, (2) it occurred after normal school hours, (3) [the employees] were not required to attend, and (4) [the employees] were not paid for attending the party." *Williams*, 17 S.W.3d at 698.

Without stating a specific test to determine if the employees were acting within the scope of their duties, the court of appeals in *Williams* analyzed the school-district employees' summary-judgment evidence and concluded that they established as a matter of law that they were acting within the scope of their duties when the incident occurred. *Id.* at 697–99. The court noted that the defendants' summary-judgment proof showed that the employees were requested to attend the party to supervise the students and that employees were expected to attend school-sponsored functions outside of normal school hours at the principal's request. *Id.* at 698–99. The court stated that "the purpose of [the employees'] attendance was to supervise the students, an obligation they would not have but for their employment with the school district." *Id.* at 699. Therefore, the court of appeals concluded that the employees' summary-judgment evidence conclusively established that they were acting within the scope of their duties. *Id.*

The defendants here argue that this case conflicts with *Williams*. They argue that the court of appeals in this case used an inappropriately narrow common-law *respondeat superior* analysis to determine whether the defendants' acts were within the scope of their duties under section 22.051(a). That analysis, they argue, conflicts with the more expansive approach to immunity taken by the court of appeals in *Williams*, which they claim is the proper approach under this Court's decisions in *Hopkins v. Spring Independent School District*, 736 S.W.2d 617 (Tex.1987), and *Barr v. Bernhard*, 562 S.W.2d 844 (Tex. 1978). Ison–Newsome responds that this case does not conflict with *Williams* because the court of appeals here expressly declined to interpret section 22.051, which was the basis for the court's holding in *Williams*, and because this case involves intentional-tort claims and *Williams* did not. We agree with Ison–Newsome that the decision in this case does not conflict with *Williams*.

■■■ For this Court to have conflicts jurisdiction, the rulings in the two cases must be "so far upon the same state of facts that the decision of one case is necessarily conclusive of the decision in the other." *Coastal Corp. v. Garza*, 979 S.W.2d 318, 319 (Tex.1998). Cases conflict for jurisdictional purposes only if the conflict is upon the very question of law actually decided. *Id.* Likewise, while factual identity between the cases is not required, cases do not conflict if "a material factual difference legitimately distinguishes their holdings." *Id.* at 320.

We find no inconsistency between the holding in *Williams* and the holding in this case. The courts of appeals in these cases did not announce conflicting rules of law. In *Williams*, the court of appeals was evaluating whether the defendants, in response to negligence claims, had proven the statutory immunity elements. The court held, without stating any particular test for how to determine if the employees were acting within the scope of their duties, that the employees' and school superintendent's testimony established that accompanying

and supervising the students on school-sponsored activities, including field trips, was part of each employee's job. Thus, the employees were acting within the scope of their duties while at the party.

Here, the court of appeals was presented with different kinds of claims from those presented in *Williams*. Ison–Newsome claims damages from defamation, civil conspiracy, and intentional infliction of emotional distress—all intentional torts. Thus, the court was faced with deciding whether the immunity provision should apply at all in the intentional-tort context. But instead of reaching the more general question of "whether the education code provides absolute immunity for *any* act of a school district professional employee," it limited its holding to the conclusion that the affidavits before it did not establish as a matter of law that the defendants were acting within the scope of their duties. 68 S.W.3d at 5. In the absence of guiding precedent in the specific context of professional school employees' duties or immunity, it analyzed the affidavits using well-established agency law on when an employee's intentional tort falls within the scope of employment under the *respondeat superior* doctrine. *Id.* Because the court in each case based its holding specifically on the sufficiency of the summary-judgment evidence, a highly fact-specific inquiry driven by the different nature of the claims in each case, we cannot conclude that the decision in *Williams* is "necessarily conclusive" of the decision in this case. *Coastal Corp.*, 979 S.W.2d at 319. Moreover, we cannot conclude that the outcome in this case would have been different if the court in this case had used the same approach, to the extent possible given the differing facts, as did the court in *Williams*.

We note that the defendants here point to language in *Williams* stating that "im-munity applies without regard to the plaintiff's theory of liability," 17 S.W.3d at 701, to support their contention that the fact that intentional torts were alleged here and not in *Williams* is not a material distinction. But the court did not make that statement in its discussion of the scope of the employees' duties. Rather, it made that statement in response to the parents' argument that even if the elements of an immunity defense under Education Code § 22.051(a) had been established, the Education Code does not provide immunity for the employees' breaches of the common-law duty of *in loco parentis* or their duty to follow the facility's rules. *Williams*, 17 S.W.3d at 700–01. When the court noted that the liability theory was irrelevant to immunity claims, it had already held that the employees had established all three of the statutory elements of their immunity defense—the only question at issue in this case. *Id.* at 699–701. Because the court of appeals here determined that the defendants' affidavits presented "mere legal conclusions" and did not meet the *respondeat superior* test, it did not reach the question whether breach of various duties would defeat a properly established immunity defense. 68 S.W.3d at 5.

We now address the dissenting opinion's view that we have jurisdiction over this interlocutory appeal. The dissenting opinion agrees that "because this is an interlocutory appeal ... this Court's jurisdiction is limited," 73 S.W.3d at 186, but then argues for the exact opposite proposition—that the legislative limits on our jurisdiction over interlocutory appeals are meaningless, and that the only limit on our jurisdiction is essentially the failure of four justices to take an interest in a case at any particular time. This argument defies the Legislature's clear and express limits on our jurisdiction.

■ First, Petitioners' view that we have jurisdiction is not a judicial determination that we do, whether urged in its papers or at oral argument. The view of the four justices who voted to grant the petition is also not a judicial determination that we have jurisdiction. While Canon 3(B)(11) of the Code of Judicial Conduct prevents the Court from revealing the votes and positions taken during the eight months this case has been pending, the dissenting opinion's statement that "the issue [of jurisdiction] had been resolved," and intimation that the Court has deliberately put the parties to greater expense, 73 S.W.3d at 188, are not true. Although the votes of only four justices are needed to grant a petition for review, five votes are needed to render a judgment; thus when conflicts is the sole basis for jurisdiction over an interlocutory appeal, jurisdiction remains an issue until five justices agree that a case meets the conflicts standard. The author of the dissenting opinion has written previously that we should take a broader approach to the conflicts-jurisdiction standard. *See, e.g., Coastal Corp. v. Garza,* 979 S.W.2d 318, 323–24 (Tex.1998) (Hecht, J., dissenting); *Wagner & Brown v. Horwood,* 53 S.W.3d 347 (Hecht, J., dissenting from denial of motion for rehearing of petition for review). But a majority of the Court continues to abide by the Legislature's clear limits on our interlocutory-appeal jurisdiction.

Second, the dissenting opinion's reading of Government Code § 22.225(c) conflates conflicts jurisdiction with dissent jurisdiction, thereby erasing any distinction between these two separate bases for jurisdiction. The Legislature identified them as distinct bases for jurisdiction in sections 22.001(a)(1) and (a)(2), and section 22.225(c) refers specifically to the two separate provisions of section 22.001(a) providing for conflicts and dissent jurisdiction.

*See* Tex. Gov't Code §§ 22.001(a)(1)-(2), 22.225(c). The dissenting opinion offers no reason why the Legislature might have created two independent provisions to provide the same basis for jurisdiction; at least one of them would be superfluous. Moreover, both section 22.225(c) and section 22.001(a)(1) refer to a disagreement material to "the decision." *Id.* §§ 22.001(a)(1), 22.225(c). How that can mean anything other than a disagreement among the justices who decide a single case is not apparent. Again, we cannot simply ignore the legislative limits on our jurisdiction, and not even Petitioners argue that we should do so on this basis.

■ Finally, we address the dissenting opinion's view that conflicts jurisdiction may be established by citing to unpublished opinions. First, as Petitioners acknowledge, Texas Rule of Appellate Procedure 47.7 plainly states that unpublished opinions "have no precedential value and must not be cited as authority by counsel or by a court." Tex.R.App. P. 47.7. If a case has no precedential value, by definition it cannot "operate to overrule" a later case, *Christy v. Williams,* 156 Tex. 555, 298 S.W.2d 565, 569 (1957), and thus cannot be the basis for conflicts jurisdiction. While the Court is currently considering amending rule 47.7 to eliminate unpublished opinions, until we do so it would be patently unfair to those litigants who followed rule 47.7 to now tell them that if they had violated the rule, they would have had a better chance of obtaining review. As we have said, we do not amend rules of procedure by opinion. *See, e.g., State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992) (Hecht, J.); *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 915 (Tex.1992) (Hecht, J.).

Moreover, if the standards for publication set out in rule 47.4 are carefully fol-

lowed, there will likely not be many conflicts among unpublished opinions that meet the conflicts-jurisdiction standard, because unpublished opinions will be reserved for applying established law to highly fact-specific cases. *See* Tex.R.App. P. 47.4. If an opinion establishes a new rule of law, modifies an existing rule, applies a rule to a novel fact situation likely to recur, involves an issue of continuing public interest, criticizes existing law, or resolves a conflict, then the opinion meets the standards for publication. *Id.* The standards are open to some degree of interpretation, but the guidelines they contain do suggest that rule 47.7's prohibiting citation of unpublished opinions was not designed to defeat or circumvent this Court's jurisdiction. The dissenting opinion's view turns unpublished opinions into precedent, which is directly contrary to the plain language of rule 47.7.

The dissenting opinion's view is also based on the assumption that unpublished opinions from all the courts of appeals are equally available. That is not true. The courts of appeals have different policies, over different time periods, on how unpublished opinions are made available. For example, the Twelfth Court of Appeals sent unpublished opinions to Westlaw and Lexis for the first time on September 1, 2001. The Eighth Court of Appeals has been sending unpublished opinions to computer services for two years; the Third Court of Appeals has been sending them for six years. Unpublished opinions are not currently available even on the websites for some of the courts of appeals; unpublished opinions from the Second Court of Appeals are available only on request. Our conflicts jurisdiction over interlocutory appeals cannot rest on opinions that are not equally available to everyone.

We conclude that *Enriquez* cannot be considered for purposes of conflicts juris-

diction because it is not a prior decision of another court of appeals. We also conclude that the court of appeals' decision here does not conflict with *Williams.* Therefore, we do not have jurisdiction to decide this case. Accordingly, we withdraw our order granting the petition as improvidently granted and dismiss the petition for want of jurisdiction.

Justice JEFFERSON filed a concurring opinion, in which Justice RODRIGUEZ joined.

Justice HECHT filed a dissenting opinion, in which Justice OWEN joined.

Justice JEFFERSON, joined by Justice RODRIGUEZ, concurring.

I concur with the Court's judgment and concur generally with its opinion. But I disagree that, when deciding if we have jurisdiction based on conflicting opinions, we should consider only those opinions the courts of appeals have designated for publication under Texas Rule of Appellate Procedure 47.3. Because Rule 47.7 states that unpublished opinions "have no precedential value and must not be cited as authority by counsel or by a court," *see* Tex.R.App. P. 47.3, the Court reasons that unpublished opinions cannot be the basis for conflicts jurisdiction. 73 S.W.3d 183. But Rule 47.7 does not proscribe citation of unpublished opinions for any and all purposes. By pointing out a conflicting case, an attorney or a court is not necessarily asserting it as authority or arguing for its precedential value.

Moreover, because we can reasonably construe Rule 47.7 so that it does not function as an independent limitation on our jurisdiction, we should do so. When a procedural rule conflicts with a statute, the statute controls unless the rule repeals the statute under Texas Government Code section 22.004. *Johnstone v. State,* 22

S.W.3d 408, 409 (Tex.2000). Our opinion-publishing rules should neither add to nor subtract from our statutorily-defined jurisdiction.

Thus, I agree with the dissenting opinion, in principle, that conflicts jurisdiction can be based on unpublished opinions. But the two unpublished opinions cited here do not support conflicts jurisdiction for other reasons. Petitioners argue that the present court of appeals opinion conflicts with *Outman v. Allen ISD Board of Trustees,* No. 05–97–01112–CV, 1999 WL 817694, 199 Tex.App. LEXIS 7691 (Tex. App.—Dallas Oct. 14, 1999, no pet.)(unpublished opinion). But the same court of appeals issued both opinions. The plain language of the statutes does not extend jurisdiction when the purportedly conflicting opinions issue from the same court. *See* Tex. Gov't Code § 22.001(a)(2) (delineating supreme court jurisdiction to include "a case in which one of the courts of appeals holds differently from a prior decision of another court of appeals . . . ."); *id.* § 22.225(c) (stating that the section defining court of appeals jurisdiction "does not deprive the supreme court of jurisdiction in a civil case . . . in which one of the courts of appeals holds differently from a prior decision of another court of appeals . . . .").

The petitioners claim that the court of appeals' opinion here also conflicts with another unpublished opinion, *Beresford v. Gonzales,* No. 13–99–384–CV, 1999 Tex. App. LEXIS 8689 (Tex.App.—Corpus Christi Nov. 18, 1999, no pet.)(unpublished opinion). They note that the court of appeals' opinion here limits immunity to a school official's actions that accomplish a legitimate school district objective, while in *Beresford,* the court of appeals held that a coach's actions were within the scope of her duties without mentioning any addi-

tional requirements. But any tension between the present case and *Beresford* would be, at most, by implication. Apparent inconsistencies in principles the courts of appeals announce are not sufficient to establish conflicts jurisdiction. *Gonzalez v. Avalos,* 907 S.W.2d 443, 444 (Tex.1995)(quoting *Christy v. Williams,* 156 Tex. 555, 298 S.W.2d 565, 567 (1957)). Rather, the "conflict must be apparent from the face of the opinions," *Hill v. Miller,* 714 S.W.2d 313, 315 (Tex.1986), and, "[t]he conflict must be on the very question of law actually involved and determined. . . ." *Coastal Corp. v. Garza,* 979 S.W.2d 318, 319 (Tex.1998) (quoting *Christy v. Williams,* 156 Tex. 555, 298 S.W.2d 565, 568–69 (1957)). The opinions are not so inconsistent that, had they been issued by the same court, one would necessarily overrule the other, which is necessary for conflicts jurisdiction. *See Coastal Corp.,* 979 S.W.2d at 319–20. Thus, the opinion in the present case and in *Beresford* do not present a conflict establishing our jurisdiction.

Nor do the published opinions cited here establish conflicts jurisdiction, for the reasons the Court explains. I would hold that conflicts jurisdiction can be based on unpublished opinions. But because neither the published nor the unpublished opinions cited here support conflicts jurisdiction, I concur in the Court's judgment.

Justice HECHT, joined by Justice OWEN, dissenting.

Unquestionably, disagreement exists among some of the justices of the courts of appeals over the scope of immunity afforded school districts' professional employees "for any act that is incident to or within the scope of the duties of the employee's position of employment" by section

22.051(a) of the Texas Education Code.[1] The court of appeals in the case before us held that four professional employees of a school district who publicly questioned whether a colleague should have had two bathrooms built in her district office were not as a matter of law immune from liability for defamation absent proof that they acted within their general authority, in furtherance of the district's business, and to accomplish an objective for which they were hired.[2] In *Outman v. Allen ISD Board of Trustees*, the court of appeals held that two professional employees of a school district who publicly charged a colleague with insubordination and unauthorized conduct were as a matter of law immune from liability for defamation because their actions were plainly "incident to or within the scope of" their duties.[3] These two decisions, requiring different levels of proof to establish immunity, are in direct conflict, even by the Court's hypertechnical standards.[4] A decision subsequent to both, *Enriquez v. Khouri*, reaches a result consistent with *Outman* and inconsistent with the present case on essentially indistinguishable facts.[5]

This Court can easily resolve the conflict; plain statutory language gives it jurisdiction. And it certainly ought to do so, for obvious reasons: to remove needless uncertainty in this area of the law and give school employees clearer direction, to save the parties in this case and other cases the expense and delay of continuing to litigate an issue that can easily be settled, to spare the lower courts from further struggling with the issue, and to prevent the public's resources from being wasted in pointless court proceedings. But the Court refuses to give direction, without any good legal or jurisprudential reason, and therefore I respectfully dissent.

Were the parties appealing from a final judgment, this Court's jurisdiction would be undeniable because the case involves the construction of a statute, section 22.051(a), and because the issues raised are important to the State's jurisprudence, both of which are grounds for jurisdiction under section 22.001(a) of the Texas Government Code.[6] But because this is an

1. Tex. Educ.Code § 22.051(a) ("A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.").

2. 1999 WL 1012964, 1999 Tex.App. LEXIS 8340, http://courtstuff.com/cgi-bin/as—web.exe?c05—00.ask+D+ 3183126 (Tex.App.—Dallas 1999) (unpublished opinion).

3. 1999 WL 817694, 1999 Tex.App. LEXIS 7691, http://courtstuff.com/cgi-bin/as—web.exe?c05—00.ask+D+ 1630829 (Tex.App.—Dallas 1999, no pet.) (unpublished opinion).

4. *See, e.g., Coastal Corp. v. Garza*, 979 S.W.2d 318, 319 (Tex.1998).

5. 13 S.W.3d 458 (Tex.App.—El Paso 2000, no pet.) (holding that a school district employee was immune from liability for defamation for statements made concerning other employees who had been terminated from a program because the statements were made, as a matter of law, within the scope of the defendant's duties).

6. Tex. Gov't Code § 22.001(a)(3), (6) ("The supreme court has appellate jurisdiction, except in criminal law matters, coextensive with the limits of the state and extending to all questions of law arising in the following cases when they have been brought to the courts of appeals from appealable judgment of the trial courts: ... (3) a case involving the construction or validity of a statute necessary to a determination of the case; ... and (6) any other case in which it appears that an error of law has been committed by the court of appeals, and that error is of such importance to the jurisprudence of the state that, in the opinion of the supreme court, it requires cor-

interlocutory appeal—one from the denial of a motion for summary judgment based on an assertion of immunity [7]—this Court's jurisdiction is limited. Section 22.225(b)(3) of the Government Code [8] prohibits an interlocutory appeal to this Court except, as provided in subsection (c), in a case "in which the justices of the courts of appeals disagree on a question of law material to the decision or in which one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court, as provided by Subdivisions (1) and (2) of Section 22.001(a)." [9] The latter provisions are an affirmative grant of jurisdiction resembling the exceptions just stated.[10]

The respondent moved the Court to dismiss the petition for review for want of jurisdiction on the ground that the case did not fall within the exceptions in section 22.225(c). In response, petitioners argued that the court of appeals' decision conflicted with decisions in four other cases: *Williams v. Chatman,*[11] *Beresford v. Gonzales,*[12] *Outman v. Allen ISD Board of Trustees,*[13] and *Enriquez v. Khouri.*[14] After requesting and receiving full briefing on all issues, the Court denied the petition for review, rather than dismissing it for want of jurisdiction, and denied the respondent's motion to dismiss.[15]

Petitioners moved for rehearing, stating:

By denying the motion to dismiss for want of jurisdiction, the Court acknowledged that it has jurisdiction to review the lower court's judgment in this case because the court held differently on a material issue of law that one or more other courts of appeals.

rection, but excluding those cases in which the jurisdiction of the court of appeals is made final by statute.").

**7.** *See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(5) ("A person may appeal from an interlocutory order of a district court, county court at law, or county court that ... (5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state....").

**8.** Tex. Gov't Code § 22.225(b)(3) ("Except as provided by Subsection (c) or (d), a judgment of a court of appeals is conclusive on the law and facts, and a writ of error is not allowed from the supreme court, in ... (3) ... interlocutory appeals that are allowed by law....").

**9.** *Id.* § 22.225(c) ("This section does not deprive the supreme court of jurisdiction of a civil case brought to the court of appeals from an appealable judgment of a trial court in which the justices of the courts of appeals disagree on a question of law material to the decision or in which one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court, as provided by Subdivisions (1) and (2) of Section 22.001(a).").

**10.** *Id.* § 22.002(a)(1)-(2) ("The supreme court has appellate jurisdiction, except in criminal law matters, coextensive with the limits of the state and extending to all questions of law arising in the following cases when they have been brought to the courts of appeals from appealable judgment of the trial courts: (1) a case in which the justices of a court of appeals disagree on a question of law material to the decision; (2) a case in which one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court on a question of law material to a decision of the case....").

**11.** 17 S.W.3d 694 (Tex.App.—Amarillo 1999, pet. denied).

**12.** 1999 Tex.App. LEXIS 8689 (Tex.App.—Corpus Christi 1999, no pet.) (unpublished opinion).

**13.** 1999 WL 817694, 1999 Tex.App. LEXIS 7691 (Tex.App.—Dallas 1999, no pet.) (unpublished opinion).

**14.** 13 S.W.3d 458 (Tex.App.—El Paso 2000, no pet.).

**15.** 43 Tex. Sup.Ct. J. 1224 (Sept. 21, 2000).

The motion then turned to the merits of the case. The response did not take issue with the statement just quoted or address jurisdiction but likewise devoted itself to the merits. The Court granted the motion and set the case for oral argument on March 21, 2001.[16] There, when petitioners' counsel was asked about jurisdiction, he answered that he was under the impression that the Court had resolved that issue by denying the petition rather than dismissing it, denying respondent's motion to dismiss, and then granting the motion for rehearing that did not address jurisdiction.

Counsel was, of course, correct. The issue had been resolved, just exactly as the Court explains today: "jurisdiction remains an issue until five justices agree".[17] At least five justices did agree on the jurisdictional issue—and then denied the respondent's motion to dismiss for want of jurisdiction. How else could the motion have been denied? Had more than four justices wanted to grant it, it would have been granted and the petition dismissed. But what if the denial of the petition and motion was a mistake? One might well surmise that the Court did not grant the motion for rehearing and hear oral argument so that it could dismiss the petition, rather than deny it, with an opinion that contributes nothing to the jurisprudence. The respondent certainly requested no such relief; she was understandably quite content with the denial of the petition, as her response to the motion for rehearing made clear. A win is a win, after all. And besides, the Court's resources are hardly so abundant that we can volunteer to squander them on more arguments and opinions about why we have no jurisdiction, especially over petitions we have already denied, whether rightly or wrongly.

Legally, logically, practically, the Court could have had but one reason to grant the motion for rehearing, put the parties to the further expense of oral argument, and commit its resources to a plenary decision in the case: and that was to resolve the conflict described in the motion for rehearing regarding school employees' immunity. Yet the Court opts to avoid providing guidance on this important, recurring issue, despite the undeniable conflict in the courts of appeals and the rather plain language of the jurisdictional statutes.

Of the four cases petitioners cite for jurisdiction, *Williams v. Chatman*, the Court says, is not in such direct conflict with the court of appeals' decision in this case to invoke our limited jurisdiction. Perhaps so, given the Court's cribbed view of its "conflicts" jurisdiction. Another case, *Beresford v. Gonzales*, the Court does not deign to mention; suffice it to say, however, that the court of appeals' decision in the present case conflicts no more with *Beresford* than with *Williams*. That leaves two other cases cited by the petitioners, *Enriquez v. Khouri* and *Outman v. Allen ISD Board of Trustees*. *Enriquez*, the Court says, was not a "prior decision", as required by one of the exceptions in section 22.225(c), but was, in fact, issued after the court of appeals' decision in the present case. And *Outman*, the Court says, was not a decision of "another court", again in the language of part of section 22.225(c), because that case and the present one were decided by different panels of the same court of appeals. Furthermore, the Court says, a conflict with *Outman* cannot be used to invoke this Court's jurisdiction because the opinion in that case was unpublished.

So: does this Court lack jurisdiction over the present interlocutory appeal un-

---

**16.** 44 Tex. Sup.Ct. J. 316, 318 (Jan. 11, 2001). **17.** *Ante* at 183.

der section 22.225(c) because, although the decisions in *Outman* and *Enriquez* directly conflict with court of appeals' decision here, (1) *Outman* was not decided by "another court", (2) *Enriquez* was not "prior", and *Outman* was not published? The answers to the last two questions, at least, is no.

Whether the phrase "another court" in section 22.225(c) should be read to refer to another panel of the same court is not, in a historical context, entirely clear. Before the 1978 amendment to article V, section 6 of the Texas Constitution, each court of appeals had only three members and could not sit in panels or "sections".[18] The statutory provision that is now section 22.225(c) predates the 1978 change. We have never construed the "another court" requirement of that statute, but we did construe similar language in another jurisdictional statute in *Coultress v. City of San Antonio*, a 1916 decision.[19] We held that the requirement that one court conflict with another necessarily involved two separate courts, reasoning that it was impossible for a court to conflict with itself because its decision in a case served to overrule any prior inconsistent decisions in other cases, hence leaving no conflict.[20] This holding in *Coultress* makes sense as applied to three-justice courts of appeals, but its rationale is undercut when a larger court sits in panels. Although we have more recently held in *O'Connor v. First Court of Appeals* that "a court of appeals is a single, unitary body, even though it may sit in panels", and that "the decision of a panel constitutes the decision of the whole court" so that en banc review is "necessary to maintain uniformity of the court's decisions", and therefore "[a] non-panel member's dissent from denial of en banc review serves the same salutary purposes served by any other dissenting opinion",[21] as a practical matter, not every conflict between panels of the same court is resolved en banc. I doubt that one panel's decision can be said to overrule a prior panel's decision merely because they conflict, although this Court has never addressed that issue. Accordingly, one might argue that since 1978 "another court" should be understood to mean either another court or another panel of a court, but I think this would stretch the language too far. The best reading of section 22.225(c), even after 1978, is that "another court" means a separate court.

Although *Outman* was decided by the same court that decided the present case, and *Enriquez* was a subsequent decision, that is not the end of the jurisdictional matter. Section 22.225 "does not deprive the supreme court of jurisdiction of a civil case brought to the court of appeals from an appealable judgment of a trial court in which the justices of the courts of appeals disagree on a question of law material to the decision". That is precisely the kind of

---

**18.** *Compare* Tex. S.J. Res. 45, § 1, 65th Leg., R.S., 1977 Tex. Gen. Laws 3366 (adopted May 24, 1977) (amending article V, section 6 of the Texas Constitution, effective Nov. 7, 1978, to read "The Legislature shall ... divide this State into ... Supreme judicial districts ... and shall establish a Court of Civil Appeals in each of said districts, which shall consist of a Chief Justice and at least two Associate Justices.... The Court of Civil Appeals may sit in sections as authorized by law."), *with* Tex. S.J. Res. 16, 22nd Leg., R.S., 1891 Tex. Gen. Laws 197 (approved April 28, 1891) (amending art. V, section 6 of the Texas Constitution, effective August 11, 1891, to read: "The Legislature shall ... divide this State into ... supreme judicial districts ... and shall establish a Court of Civil Appeals in each of said districts, which shall consist of a Chief Justice and two associate Justices.").

**19.** 108 Tex. 150, 187 S.W. 194 (1916).

**20.** *Id.* at 195.

**21.** 837 S.W.2d 94, 96 (Tex.1992).

case we have here: one in which the justices of the courts of appeals—at least the courts for the Fifth and Eighth Districts in Dallas and El Paso, respectively—disagree on a question of law that is material to the decision in the present case, namely, the proper application of the immunity provided to school district professional employees by section 22.051(a) of the Education Code. Section 22.225(c) plainly does not require that the justices be sitting on the same case—indeed, it would be impossible for justices of the "courts"—plural—of appeals to sit on the same case. Nor is there a requirement that the justices be sitting on different courts, or in prior or subsequent cases. Taking the language of the jurisdictional statute literally, as this Court has repeatedly insisted must be done, when there is a disagreement among the justices of the courts of appeals on a question of law that is material to the decision in a case, this Court is not prohibited by § 22.225(b) from resolving that disagreement.

The last phrase of § 22.225(c)—"as provided by Subdivisions (1) and (2) of Section 22.001(a)"—may intend some clarification or limitation on the preceding phrases, or may merely be a reference to similar provisions. Section 22.001(a)(1) gives this Court jurisdiction over "a case in which the justices of a court of appeals disagree on a question of law material to the deci-

sion." Here "court" is singular. But section 22.001 is a recodification of former article 1728, which gave this Court jurisdiction over "[t]hose [cases] in which the judges of the Courts of Appeals may disagree upon any question of law material to the decision."[22] Article 1728 was not clear, one way or the other, whether the Court is given jurisdiction of a case involving issues over which justices of different courts in different cases disagree. It may reasonably be construed to refer to any case involving a point of law on which the justices of the courts of appeals—plural—disagree, in that same case or others. Or the choice of the plural "cases" may have necessitated the use of plurals throughout. The Legislature did not intend to eliminate this ambiguity by recodifying article 1728 because that recodification, like most others, was intended to be "without substantive change" to any provision.[23] But even if elimination of the ambiguity was an unintended consequence of recodification,[24] the recodified section 22.001(a)(1) cannot be used to cloud the meaning of the more precise language of § 22.225(c), which was unchanged by recodification.[25]

Moreover, section 22.001(a)(1) is one of several *grants* of jurisdiction. The Court could take jurisdiction over an interlocutory appeal under any other part of that section (section 22.001(a)(6), importance to the jurisprudence, is most commonly as-

**22.** Tex.Rev.Civ. Stat. art.1728 (1925), as amended through Act of May 31, 1981, 67th Leg., R. S., ch. 291, § 17, 1981 Tex. Gen. Laws 761, 773.

**23.** Act of May 17, 1985, 69th Leg., R.S., ch. 480, § 1.001, 1985 Tex. Gen. Laws 1720, 2046.

**24.** *See Fleming Foods, Inc. v. Rylander,* 6 S.W.3d 278, 286 (Tex.1999).

**25.** Tex.Rev.Civ. Stat. art. 1821 (1925), as amended through Act of May 29, 1983, 68th Leg., R.S., ch. 839, § 1, 1983 Tex. Gen. Laws

4767, 4768 ("It is provided, however, that nothing contained herein shall be construed to deprive the Supreme Court of jurisdiction of any civil case brought to the Court of Appeals from an appealable judgment of the trial court in which the judges of the Courts of Appeal may disagree upon any question of law material to the decision, or in which the one of the Courts of Appeals holds differently from a prior decision of another Court of Appeals or of the Supreme Court upon a question of law, as provided for in Subdivisions (1) and (2) of Article 1728.").

serted) if not prohibited from doing so by section 22.225(b), with the exception in subsection (c). The clearer language of section 22.225(c) does not preclude this Court from taking jurisdiction over a case involving legal issues on which justices in other cases or on other courts disagree. And importantly, the language of section 22.225(c) does not differ from its pre-codification version.[26] Thus, even if the grant in section 22.001(a)(1) is unclear, section 22.225 does not prohibit jurisdiction, and there are other grants in section 22.001(a)—in this case, for cases involving the construction of a statute and cases that are important to the jurisprudence.

The "disagreement" clause of § 22.225(c) and § 22.001(a)(1) is often referred to as "dissent jurisdiction",[27] but that label does not accurately reflect the statute, and its repeated use, equally as casual as recurrent, can hardly constitute an adjudication of the meaning of the clause. Accordingly, I would hold that the Court is not prohibited from taking jurisdiction of this case by section 22.225(b)(3) because of the exception in section 22.225(c), and that it should take jurisdiction under section 22.001(a)(3) & (6).

The Court gives only one reason for not following section 22.225(c) literally, which is that to do so conflates two separate exceptions in that statute. But this simply presumes that the Legislature intended two separate exceptions in section 22.225(c), a presumption for which the Court has no authority and which is not logically required. It is just as likely that the Legislature intended to restate and emphasize a broad exception to the prohibition in section 22.225(b) to allow this Court to resolve unnecessary conflicts on

questions of law in the courts of appeals, saving the judiciary, litigants, and the public a great deal of time and money. I do not know whether that was the Legislature's purpose—although it would certainly have been a laudable one—any more than the Court knows that it was not. Rather than speculate over what purposes the Legislature could have had in writing the statute as it did, we ought to follow the words it chose as precisely as we can. I do not see how this word-for-word adherence to the statute can fairly be said, in the Court's words, to "def[y] the Legislature's clear and express limits on our jurisdiction."[28] This exaggeration cannot obscure the Court's single-minded determination to narrow its jurisdiction with stinting respect for what the Legislature has provided.

Finally, the fact that the opinion in *Outman* was not designated for publication under Rule 47.3 of the Rules of Appellate Procedure does not deprive it of significance in determining this Court's jurisdiction for four reasons.

*First:* Neither the statutes conveying jurisdiction, nor their purposes, nor common sense supports the Court's position that it has jurisdiction over a case with an unpublished court of appeals opinion—the opinion in the present case was unpublished—if that *unpublished* opinion conflicts with a *published* opinion but not if it conflicts with *another* unpublished opinion. The following anomaly results. When the opinion being reviewed is unpublished, as it is here, and therefore less likely to affect the jurisprudence than a published opinion, the Court would nevertheless hold that it had "conflicts jurisdiction" over the

---

26. See id.

27. *See, e.g., Gonzalez v. Avalos,* 907 S.W.2d 443, 444 (Tex.1995); *Stafford v. Stafford,* 726

S.W.2d 14, 15 (Tex.1987); *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 397 (Tex.1979).

28. *Ante* at 182.

case if the opinion conflicted with another published opinion. The Court could correct an error in an opinion without precedential value because a citable opinion was correct. But when the opinion being reviewed is published, citable, and thus of greater significance, the Court would hold that it lacks jurisdiction to correct error in the opinion based on a conflict with one or even a dozen unpublished opinions that were right. As long as only the wrong opinions are published, the Court has no jurisdiction to resolve a conflict. And to compound the harm, litigants cannot even cite the correct opinions to courts who have not yet addressed the issue. "Conflicts jurisdiction", in the Court's view, not only fails to resolve conflicts, but creates injustice.

*Second:* The Court cannot use a rule of procedure—specifically, Rule 47.7 of the Texas Rules of Appellate Procedure, which gives unpublished opinions no precedential value—to reduce categorically its statutory jurisdiction. This Court's "conflicts jurisdiction", in various forms, traces back to an 1891 amendment to article V, section 3

of the Texas Constitution.[29] The Court's present "conflicts jurisdiction" in interlocutory appeals was conferred by the Legislature in 1953.[30] A rule first permitting the use of unpublished opinions was adopted in 1941,[31] although unpublished opinions were sometimes used before then.[32] Not until 1982 did the Court adopt a rule limiting the precedential value of unpublished opinions.[33] No argument can be made that before 1982 unpublished opinions could not give rise to "conflicts jurisdiction"; until the 1982 rules change, the precedential value of unpublished opinions was not limited. The rules amendments cannot have diminished the Court's "conflicts jurisdiction". Article V, section 3 provides that the Supreme Court's appellate jurisdiction "shall extend to all cases except in criminal law matters and as otherwise provided in this Constitution or by law." [34] The Constitution does not permit the Court to enlarge or diminish by rule its own jurisdiction over categories of cases—here, those with unpublished opinions.

*Third:* It is, of course, no answer to the last point that this Court can order opin-

29. *See Schintz v. Morris,* 89 Tex. 648, 35 S.W. 1041, 1041 (1896).

30. Act of May 19, 1953, 53rd Leg., R.S., ch. 424, § 1, 1953 Tex. Gen. Laws 1026.

31. Tex.R. Civ. P. 452, Order of the Supreme Court of Texas, Adopting Rules of Civil Procedure, 136 Tex. 442, 580 (Oct. 29, 1940, eff. Sept. 1, 1941) ("Opinions shall be ordered not published when they present no question or application of any rule of law of interest or importance to the jurisprudence of the State."), *amended by* Order of the Supreme Court of Texas, Adopting Amendments, 629–630 S.W.2d xli, xli-xlii (Apr. 15, 1982, eff. Aug.15, 1982) (adding Rule 452(b)-(f)), *repealed by* Order of the Supreme Court of Texas, Adopting Amendments to the Rules of Civil Procedure, 705–706 S.W.2d xxxi (Apr. 10, 1986, eff.Sept.1, 1986) (repealing Rule 452), *replaced by* Tex.R.App. P. 90, Order of the

Supreme Court of Texas, Promulgating New Rules of Appellate Procedure, 707–708 S.W.2d xxix, lxxxv-lxxxvi (Apr. 10, 1986, eff. Sept. 1, 1986), *replaced by* Tex.R.App. P. 47, Order of the Supreme Court of Texas, Final Approval of Revisions to the Texas Rules of Appellate Procedure (Aug. 15, 1997, eff. Sept.1, 1997).

32. *See Cooper v. City of Dallas,* 83 Tex. 239, 18 S.W. 565, 565 (1892) (referring to an unpublished 1884 opinion of the commission of appeals).

33. Tex.R. Civ. P. 452(b)-(f), Order of the Supreme Court of Texas Adopting Amendments to the Rules of Civil Procedure, 629–630 S.W.2d (Texas Cases) xli, xli-xlii (Apr. 15, 1982, eff.Aug.15, 1982).

34. Tex. Const. art. V, § 3.

ions published.[35] The Court has no more power to affect its jurisdiction by choosing whether to apply its rules to publish opinions than by choosing whether to adopt those rules in the first place. As a practical matter, the Court rarely orders an unpublished opinion published, and has never done so in order to cause a conflict over which it would then assert jurisdiction. It refuses to do so here.

*Fourth:* The Court's restrictive view of its "conflicts jurisdiction" not only results in anomalies, as I have already noted, but fosters the very conflicts and uncertainties in the law it was designed to prevent. To say that an opinion is unpublished these days means little more than that the court has not designated that it be included in the *South Western Reporter.* Unpublished opinions are often available from computer research services, as the opinions in this case and *Outman* are, on computer websites, as both of these opinions are, in published topical materials, and of course, from the courts that issued them and the parties that received them. In advising clients and representing them in courts, lawyers are often aware of unpublished opinions. Not knowing whether conflicts in judicial decisions can be resolved only heightens the difficulties in giving meaningful legal advice. The Court's refusal to give its "conflicts jurisdiction" functional content leaves Texas courts and litigants in a wasteful, costly uncertainty that is entirely avoidable.

\*    \*    \*    \*    \*    \*

Confusion, and waste, which "conflicts jurisdiction" is designed to avoid, are the hallmarks of the Court's "conflicts jurisdiction" jurisprudence. "Conflicts jurisdiction", in the Court's hands, is not a functional tool for resolving conflicts in the law but a contorted choreography for dancing around them. The parties to the case before us have invested their time and resources in requesting a resolution of a real conflict in the courts over an issue that affects not only these litigants but other school employees as well. That investment has been wasted. If petitioners are correct in their view of their statutory immunity, they and others will be put to trial unnecessarily, at further expense to themselves, and at a cost to taxpayers for wasted court time. If petitioners are incorrect, then litigants in the Eighth Court of Appeals District will have lost important rights because of that court's overly expansive view of immunity. As confident as the Court seems to be that this is the right result, it might explain why real conflicts that cost private parties and the public time and money cannot be avoided despite a specific grant of jurisdiction whose obvious purpose is to prevent them.

I respectfully dissent.

---

**35.** *See* Tex.R.App. P. 47.3(d) ("The Supreme Court or the Court of Criminal Appeals may, at any time, order a court of appeals' opinion published.").